Arthur LUJAN, Plaintiff–Appellant,

v.

**PACIFIC MARITIME ASSOCIATION; International Longshoremen's and Warehousemen's Union, Locals 13 and 63, Defendants–Appellees.**

No. 97–55024.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 1998.

Decided Jan. 22, 1999.

Evan Haglund, Phoenix, Arizona, for the plaintiff-appellant.

Dennis A. Gladwell, Geniene B. Stillwell, Gibson, Dunn & Crutcher, Irvine, California; Beth A. Ross, Leonard, Carder, Nathan, Zuckerman, Ross, Chin & Remar, San Francisco, California, for the defendants-appellees.

Robert J. Gregory, Equal Employment Opportunity Commission, Washington, D.C., for the amicus curiae.

Before: CANBY, JR. and KOZINSKI, Circuit Judges, and WEINER,[1] District Judge.

Opinion by Judge CANBY, JR.; Concurrence by Judge WEINER.

CANBY, JR., Circuit Judge:

Arthur Lujan contends that he has been denied access, because of his physical disability, to longshore jobs that he could perform. He brought this action against the Pacific Maritime Association ("PMA") and the International Longshoremen's and Warehousemen's Union and two of its locals ("the Union"),[2] claiming violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't.Code § 12900 et seq., and state tort law of negligent infliction of emotional distress. The district court granted summary judgment to the defendants on the ground that Lujan was judicially estopped from bringing his claims because he had secured disability benefits under the Social Security Act by representing that he was unable to work. We reverse that decision on the authority of *Johnson v. Oregon*, 141 F.3d 1361 (9th Cir. 1998), which was handed down after the district court had ruled. We also reject the contentions of the defendants that the summary judgment may be upheld on the ground that Lujan was physically unqualified for any longshore work. We conclude that Lujan has raised a triable issue of fact as to whether he is qualified to perform some longshore jobs. We further conclude that he is entitled under the ADA to an accommodation for jobs for which he is qualified so long as the accommodation does not violate PMA's and the Union's bona fide seniority system.

## BACKGROUND

Lujan was injured while working as a truck driver in 1986 and reinjured himself in 1987. As a result, he lost the use of his right arm and hand and has difficulty moving his neck. He also suffers chronic back pain. Lujan applied to the Social Security Administration for disability benefits in 1989, certifying that he was disabled and unable to work. After an initial denial, he was awarded disability benefits. In 1995, he certified that he remained disabled, but was notified that his benefits would be terminated because he could perform some kinds of work. He has requested a hearing to contest the termination. The matter apparently is still pending.

In January 1995 Lujan went to PMA's hiring hall in Long Beach/Los Angeles Port and sought work as a longshoreman. To give meaning to Lujan's claim that he is qualified for such work, it is necessary to describe the unusual nature of longshore hiring and work assignments.

Long Beach/Los Angeles Port longshoremen are not assigned jobs or shifts on a long-term basis. In fact, the initial decision whether to work on any particular day rests with the individual longshoreman. If he decides to work, he goes to the hiring hall and requests an assignment for the day. Assignments are distributed on the basis of a classification scheme that reflects the seniority of the longshoreman. There are four classes of longshoremen. At the top, with the most seniority and the highest priority for receiving jobs, are Class A registered longshoremen. Next are Class B registered longshoremen, then "identified casuals" who have met certain pre-employment criteria, and finally, "unidentified casuals." This last group holds the least seniority and the lowest priority for assignments. If a longshoreman is offered an assignment and he declines it, he is "flopped" to the end of the line; he will not be given another job that day until all other longshoremen present have been offered a position.

The physical demands of the various longshore assignments vary widely. Many are

---

1. The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2. Lujan also sued the Joint Labor Relations Committee, apparently intending the Coast Labor Relations Committee, in which PMA and the Union participate. The Committee, among other things, sets standards for longshore jobs. Because its position is subsumed by that of PMA and the Union, the Committee will not be referred to again.

demanding, calling for slinging loads, hooking and unhooking cargo, laying blocks, working with shovels, building pallets, driving heavy vehicles, and securing and unsecuring cargo with lashing bars and chains. Other jobs are less demanding. Chief among these are signal work and the various clerk positions.

Lujan's 1995 appearance at the PMA hiring hall was to secure work as an unidentified casual. He received and completed a four-hour assignment driving cars onto a two-tier rack. He returned to the hiring hall on several other occasions that month. One day he was offered an assignment which he declined because he concluded that he was physically unable to perform it. The other days no positions were offered to unidentified casuals.

Later that month PMA and the Union agreed that labor demands justified allowing more workers to become identified casuals. To this end, all persons who had previously worked as unidentified casuals were allowed to take the employment examination required of all identified casuals. A major part of this exam is a test of physical strength and agility. Lujan objected to this test without success, and he eventually took the test and received a failing score.

Lujan filed this action under the ADA and the FEHA, seeking the following accommodations of his disability: 1) that he be excused from taking the pre-employment test of physical strength; 2) that he be allowed to turn down any physically demanding position without losing his priority in line at the hiring hall; 3) that he be registered as a Class B registered longshoreman for purposes of accumulating seniority and gaining access to light duty assignments; and 4) that he be credited with seniority at an accelerated rate reflecting the hours that he could accumulate if he were able bodied.

The district court granted summary judgment for PMA and the Union. It held that

Lujan was estopped from asserting that he was qualified to work as a longshoreman because he previously had stated in an application for disability benefits that he was totally disabled, and he still was receiving Social Security benefits. Lujan appeals.

## DISCUSSION

### A. Judicial Estoppel

▌ To prevail upon a claim under the ADA, Lujan must be a "qualified individual with a disability," which means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).[3] It is this requirement that the district court held Lujan to be judicially estopped from meeting. After the district court entered judgment, this court determined in another case that "neither application for nor receipt of disability benefits *automatically* bars a claimant from establishing that [he] is a qualified person with a disability under the ADA." *Johnson*, 141 F.3d at 1367. *Johnson* notes that it "is possible, due to the different definitions of disability employed by various agencies, to qualify for disability benefits and to satisfy the ADA's definition of a qualified person with a disability." *Id.* at 1366. Therefore, an individual's statements that he "is 'disabled' or 'totally disabled' for purposes of disability benefits are not necessarily inconsistent with [his] representations that [he] is a 'qualified individual with a disability.'" *Id.* at 1367 (quoting EEOC Enforcement Guidance, Notice No. 915.002, February 12, 1997, II.A).

*Johnson* also holds, however, that "material factual statements made ... in prior disability applications ... constitute useful evidence" and "may be binding in subsequent ADA claims." *Id.* at 1368, 1369. Most commonly, such statements "may be so strong and definitive that they will defeat the plain-

---

**3.** Similarly, Cal. Gov't.Code § 12940 prohibits discrimination in employment on account of disability, but not when "the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations...." The district court treated the ADA claim and the FEHA claim as equivalents, and we do the same. The parties have focused their briefs and argument on the ADA claim, and our discussion reflects that fact. To the extent that requirements under the ADA and the FEHA may diverge, *see, e.g., Ackerman v. Western Elec. Co.*, 860 F.2d 1514 (9th Cir.1988), the differences may be addressed on remand.

tiff's prima facie case on traditional summary judgment grounds." *Id.* at 1369. Less commonly, courts will apply the "factually driven" doctrine of estoppel to bar ADA representations that are so inconsistent with disability statements as to be "tantamount to a knowing misrepresentation to or even fraud on the court." *Id.* at 1368, 1369 (quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 362–63 (3d Cir.1996)) (internal quotation marks omitted). *Johnson* distinguishes and approves the application of estoppel in *McNemar v. The Disney Store*, 91 F.3d 610 (3rd Cir. 1996), in which an ADA plaintiff had not simply stated that he qualified for total disability benefits, but he had made "unconditional assertions as to disability and work." *Johnson*, 141 F.3d at 1368 (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 n. 5 (3d Cir.1997)) (internal quotation marks omitted); *see also id.* at 1369 (summary judgment appropriate where "plaintiff had claimed she was 'completely disabled for all work-related purposes' when she applied for benefits") (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1479 (9th Cir.1996)).

In this case, Lujan stated before an administrative law judge in his appeal of the initial denial of his request for disability benefits that "I have been unable to work since my date of injury and I am still unable to work." Lujan won the appeal and received benefits, but in May 1995 the Social Security Administration notified him that it intended to discontinue his benefits. In September 1995 the Social Security Administration concluded that Lujan had "the residual functional capacity to perform the equivalent of a wide range of sedentary work." Lujan has sought a hearing before an administrative law judge to contest that determination.

Neither summary judgment nor the application of estoppel against Lujan is appropriate on the facts of this case. Lujan's statement that he is "unable to work" is more readily construed as an assertion that he is eligible for total disability benefits than as an "unconditional representation" that he is

"completely disabled for all work-related purposes," *Johnson*, 141 F.3d at 1368, 1369 (quoting *Kennedy*, 90 F.3d at 1479) (internal quotation marks omitted). Lujan did not state in his disability application that he is unable to perform any specific tasks that are an essential function of every job for which he would apply with PMA. Nor, for example, did Lujan tell the Social Security Administration that he cannot use his right arm while asserting in this action that he can; Lujan concedes that he cannot use his right arm and contends only that some longshore jobs do not require use of both arms. We conclude, therefore, that Lujan's prior statements on his disability application do not bar the present action.[4] We accordingly reverse the summary judgment based on estoppel.

### B. Merits of Lujan's ADA Claim

#### 1. *The Physical Strength and Agility Requirement*

■ PMA and the Union contend that, even if estoppel was not appropriate, the district court's summary judgment may be upheld because the uncontroverted evidence establishes that Lujan is unable to perform the "essential functions" of the longshoreman's job with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8); *see also Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 874 (9th Cir.1987) ("We may affirm the district court on any ground supported by the record, even if the ground is not relied on by the district court"). PMA and the Union assert that Lujan is totally unable to perform longshore work. *See Kennedy*, 90 F.3d at 1481.

The problem with this contention of PMA and the Union is that it bundles all possible types of longshore assignments together into one "position" in order to determine its "essential functions" within the meaning of the ADA, 42 U.S.C. § 12111(8). PMA and the Union concede, however, that longshoremen have no set shifts or jobs. Moreover, a longshoreman is free to turn down any posi-

---

4. We note that, if Lujan were to be both unsuccessful in challenging the termination of his Social Security disability benefits and judicially estopped from pursuing his ADA claim, he would present the classic example of an injured claimant whip-sawed between the competing demands of the different statutes. *See Johnson,* 141 F.3d at 1368.

tion that he is offered on any particular day. So far as the record reveals, a longshoreman can refuse all but one particular type of assignment for his entire career, if he is willing to accept the consequence that he will work far more occasionally than he would if he were willing to accept all assignments. Under these circumstances, it is not defensible for PMA and the Union to describe the essential functions of the "position" of longshoreman, for purposes of the ADA, to include every possible function of every possible assignment.

Lujan is not contending that he can perform every assignment; indeed, the only assignments that he feels certain he can perform are those of signal work and various clerk jobs. To the extent that he can perform those and other light tasks and seeks those assignments without violation of PMA's and the Union's bona fide seniority system, he should not be denied the opportunity on the ground that his physical disability prevents him from performing some other assignment that he does not want and is not required to accept. This ground for refusing Lujan the status of an identified casual is not consistent with the ADA.

PMA and the Union dispute Lujan's claim that he can perform signal and clerk assignments, but they have not established the absence of a genuine issue of material fact with regard to those matters.[5] Nor have they established by uncontroverted evidence that their strength and agility test reasonably relates to those positions. See 42 U.S.C. § 12112(b)(6); 29 C.F.R. § 1630.10 (1998). The summary judgment therefore cannot be affirmed on the theory that Lujan's failure of the strength and agility test, or his conceded inability to perform many longshore tasks, establishes as a matter of law that he is not a qualified person with a disability with regard to the assignments he seeks.

2. *Lujan's other requests for accommodation*

■ In the district court, Lujan also demanded that PMA and the Union accommo-

date him by: 1) registering him as a Class B longshoreman; 2) crediting him with seniority at an accelerated rate; and 3) allowing him to turn down any physically demanding assignment without losing his priority in line. PMA and the Union contend that, as a matter of law, they are not required to make these accommodations because doing so would violate their bona fide seniority system. There is much to be said in favor of this contention with regard to the first two requests. Lujan's demands that PMA accommodate him by registering him as a Class B longshoreman and accelerating his seniority clearly would require PMA and the Union to circumvent its bona fide seniority system. The federal courts of appeals that have reached the issue are unanimously of the view that the ADA does not require accommodations that contravene the seniority rights of other employees. See Aldrich v. Boeing Co., 146 F.3d 1265, 1271 n. 5 (10th Cir.1998); Kralik v. Durbin, 130 F.3d 76, 81–83 (3d Cir.1997); Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir.1997); Eckles v. Consolidated Rail Corp., 94 F.3d 1041, 1047–51 (7th Cir.1996); Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995); Milton v. Scrivner, Inc., 53 F.3d 1118, 1124–25 (10th Cir.1995); see also Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1301–03 & n. 25 (D.C.Cir.1998) (en banc) (leaving question open). Cf. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 79, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (bona fide seniority system does not give way to accommodate religious preferences). Indeed, at oral argument Lujan ceased to insist on these two accommodations.

■ It is a closer question whether it would be a reasonable accommodation for Lujan to be permitted to retain his place in line after turning down an offered assignment that he was physically unable to perform. Lujan continues to seek this accommodation. The record is not clear on the degree to which the assignment line (from which applicants are normally "flopped" if

---

**5.** PMA protests that the job descriptions given at the hiring hall are only general in nature and vary in meaning, so the applicant cannot always know whether or not the described position is physically demanding. Whether PMA reasonably can accommodate Lujan by specifying at the hiring hall which assignments he will be able to perform is best explored on remand of this case.

they refuse an assignment) is governed by or is part of the bona fide seniority system, or on the degree to which Lujan's requested accommodation would interfere with assignments to which others were entitled by reason of seniority. If Lujan's proposed accommodation interferes with a bona fide seniority system, it is barred by *Willis v. Pacific Maritime Association*, 162 F.3d 561, 566–69 (9th Cir.1998). But if there is no violation of any seniority rights, it is by no means clear from the record that Lujan's proposed accommodation would be unreasonable as a matter of law. The reasonableness of an accommodation is ordinarily a question of fact. *See Fuller v. Frank*, 916 F.2d 558, 562 n. 6 (9th Cir.1990). Because the record needs further development, we conclude that this issue is best left for the district court in the first instance. Even if Lujan's requested accommodation is found not to be reasonable, that fact alone would not defeat Lujan's entire claim for relief. He still may succeed in showing that he is qualified for some assignments, and for the status of identified casual. Accordingly, the summary judgment dismissing Lujan's ADA and FEHA claims cannot be affirmed on the ground that two and possibly three of his requested accommodations are unreasonable.

## CONCLUSION

The judgment of the district court with regard to Lujan's claims under the ADA and the FEHA is reversed, and those claims are remanded for further proceedings in accordance with this opinion. The district court dismissed Lujan's claim for negligent infliction of emotional distress on two grounds: (1) judicial estoppel, and (2) failure to establish the limited circumstances in which emotional distress may create liability in the absence of an attendant physical impact or injury. *See Branch v. Homefed Bank*, 6 Cal.App.4th 793, 800, 8 Cal.Rptr.2d 182 (1992). Lujan has not challenged the second ground on this appeal. The judgment with regard to the claim of negligent infliction of emotional distress is therefore affirmed.

Lujan is entitled to his costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

WEINER, J., District Judge, concurring:

While I agree with the result reached by Judge Canby, and the "no per se estoppel" principle announced in *Johnson v. Oregon*, 141 F.3d 1361 (9th Cir.1998), I write separately to discuss one point.

Judge Canby concludes, based on *Johnson*, that Lujan's statement in his application for Social Security disability benefits—that he was "unable to work"—is more readily construed as an assertion that he was eligible for total disability benefits, rather than as an unconditional representation that he was completely disabled for all work-related purposes. Slip op. at 589–90. However, in a Social Security disability case, one attests that he meets a statutory requirement that he has some medically determinable basis for an impairment that prevents him from engaging in *any* "substantial gainful activity" for a statutory twelve-month period. 42 U.S.C. 423(d)(1). Thus, I would not construe such a statement as narrowly as would *Johnson*. Nonetheless, I agree that a representation of inability to work for Social Security purposes is not per se inconsistent with a claim of ability to work under ADA, since ADA provides for workplace accommodation while Social Security does not. Given that there was no evidence of a "knowing misrepresentation to or even fraud on the court," *Johnson*, 141 F.3d at 1369 (quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 362–63 (3d Cir.1996)), applying judicial estoppel was therefore not appropriate here.