**January FREDENBURG,**
**Plaintiff–Appellant,**

v.

**CONTRA COSTA COUNTY DEPART-**
**MENT OF HEALTH SERVICES,**
**Defendant–Appellee.**

**No. 97–15885.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 1998.

Decided April 19, 1999.

Darryl Parker, Fairfield, California, for the plaintiff-appellant.

Bernard Knapp, Deputy County Counsel, Martinez, California, for the defendant-appellee.

Before: CANBY and KOZINSKI, Circuit Judges, and WEINER,[1] District Judge.

Opinion by Judge CANBY; Concurrence by Judge WEINER; Dissent by Judge KOZINSKI.

CANBY, Circuit Judge:

The question before us is whether plaintiff-appellant January Fredenburg is judicially estopped from establishing a claim against her former employer under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Fredenburg had applied for and received state temporary disability insurance benefits available to workers who, because of a physical or mental condition, are "unable to perform [their] regular or customary work." Cal. Unemp. Ins. Code §§ 2601, 2626, 2653. The district court held that this fact judicially estopped Fredenburg from establishing that she is a "qualified individual with a disability" under § 12112(a) of the ADA.

1. The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

We conclude that Fredenburg is not judicially estopped, and we accordingly reverse the judgment of the district court.

## I

Until 1995, Fredenburg worked as a Mental Health Treatment Specialist II for the Contra Costa County Department of Health Services ("Health Services"). After several on-the-job difficulties with co-workers, Health Services asked Fredenburg to submit to a fitness-for-duty examination, as authorized by the applicable collective bargaining agreement. A psychiatrist and a clinical psychologist diagnosed Fredenburg as suffering from paranoia and recommended that she take a leave of absence and pursue therapy. Health Services placed Fredenburg on administrative leave with pay for two weeks, and thereafter on indefinite leave without pay. Fredenburg appealed to the County Merit Board, claiming that she was fit for work. The Board denied her appeal. Meanwhile, Fredenburg applied for and received disability benefits from the State of California, which provides temporary benefits up to one year for workers who, because of a physical or mental condition, are "unable to perform [their] regular or customary work." Cal. Unemp. Ins. Code §§ 2601, 2626, 2653. She received benefits from November 1995 to May 1996. The benefits were terminated on May 12, 1996, after a state psychiatrist found her capable of returning to work. Fredenburg attempted to have the benefits continued, certifying on May 22, 1996 that she was still disabled and incapable of doing her regular work, but she was unsuccessful.

The following month, Fredenburg sought to return to work, and Health Services asked her to undergo another fitness-for-duty examination. Fredenburg refused, contending that the examination was overbroad in scope and invaded her privacy. Health Services did not allow Fredenburg to return to work. Fredenburg then commenced this action.

Fredenburg stated two ADA claims: (1) that Health Services unlawfully discriminated against her by removing her from work and refusing to permit her to return; and (2) that Health Services' fitness-for-duty examination exceeded ADA's permitted boundaries for medical examinations. Fredenburg also alleged a number of state law claims.

The district court granted summary judgment for Health Services on the ADA claims. With regard to the first claim, the court held that Fredenburg's representations to the state benefits agency that she was unable to do her regular work judicially estopped her from asserting in this action that she was a "qualified individual" under the ADA, § 12112(a). The district court then held that this conclusion was also fatal to Fredenburg's second ADA claim, because she had to be a "qualified individual" in order to maintain a claim for an improper medical examination requirement. After ruling for Health Services on the ADA claims, the district court elected not to exercise supplemental jurisdiction over the state-law claims, and dismissed them without prejudice.

## II

In order successfully to pursue her claim of disability discrimination, Fredenburg first must show that she is a "qualified individual with a disability." 42 U.S.C. § 12112(a); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1480 (9th Cir.1996).[2] To be "qualified," Fredenburg must be able to perform all the essential functions of her job, either with or without a reasonable accommodation for any disability. *See* 42 U.S.C. § 12111(8). Health Services argues that Fredenburg cannot perform her job because of her mental health problems. In support, Health Services points to the many documented examples of Fredenburg's on-the-job troubles and the physicians' opinions concluding that she suffers from paranoia. Fredenburg, however, offers the declaration of her own psycholo-

2. We assume that Fredenburg's mental condition falls within ADA's definition of disability.

gist, who opined that Fredenburg was able to return to work, but would benefit from a transfer to a less stressful work environment. Fredenburg also points to the opinion of the physician who examined her for purposes of determining her eligibility for disability benefits, and who expressed the view that Fredenburg suffered a "major depressive episode" but would be ready to return to work after a month's rest.

The conflicting opinions about Fredenburg's ability to work create a genuine dispute as to whether Fredenburg could do her job. It is true that Health Services presents substantial evidence that she could not. It is also true that Health's statements that she could do the job, when viewed in the light of her statements to the state benefits agency that she was still disabled, might be insufficient of themselves to forestall summary judgment. *See Kennedy,* 90 F.3d at 1481. Unlike the plaintiff in *Kennedy,* however, Fredenburg supported her statements with the opinions of two physicians. Considering all of the evidence, a reasonable trier of fact could find that Fredenburg can perform all of the essential functions of her job. On the factual issue presented, therefore, summary judgment was improper.

 The district court, however, held that Fredenburg was bound by her representations to the state Employment Development Department that she was disabled and incapable of doing her regular work. In the district court's view, these representations contradicted her claim in these proceedings that she is a qualified individual. The court therefore invoked the doctrine of judicial estoppel, which precludes litigants from asserting inconsistent positions in different forums.[3] For several reasons, we conclude that this application of judicial estoppel is inappropriate.

Judicial estoppel has been controversial in ADA cases. Several district courts have ruled that an application for state or federal disability benefits acts as a per se bar to an ADA claim. We rejected this position in *Johnson v. Oregon,* 141 F.3d 1361 (9th Cir.1998). We pointed out that "[i]t is possible, due to the different definitions of disability employed by various agencies, to qualify for disability benefits and to satisfy the ADA's definition of a qualified person with a disability." *Id.* at 1366; *see also Lujan v. Pacific Maritime Ass'n,* 165 F.3d 738, 740 (9th Cir.1999). We therefore rejected a per se rule, but we went farther than that. Although we acknowledged that estoppel might be appropriate when the inconsistency of statements and positions was so blatant as to "demonstrate that a claimant is playing fast and loose with the courts," our clear preference was that inconsistent statements simply be considered along with other evidence to see whether they were so damaging that no rational trier of fact could rule in the plaintiff's favor.

We emphasize that in general, the use of a plaintiff's prior representations on disability benefits as evidence helpful in evaluating an ADA claim-the approach of *Kennedy* will suffice to protect the sanctity of the judicial process. "Straightforward summary judgment analysis, rather than theories of estoppel" will be appropriate in most cases. *See Griffith* [*v. Wal–Mart Stores, Inc.,* 135 F.3d 376,] 382–83 [ (6th Cir.1998) ]. Judicial estoppel applies when a party's position is "tantamount to a knowing misrepresentation to or even fraud on the court." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 362–63 (3d Cir.1996) (citations and internal quotations omitted).

*Johnson,* 141 F.3d at 1369.

Fredenburg was not playing fast and loose with, or committing fraud on, the court. Her case illustrates the problems faced by a worker in her position. Her employer concluded that she could not perform her job, and placed her on unpaid leave. She disagreed with her employer's

---

3. The doctrine is sometimes awkwardly but more precisely referred to as the doctrine of preclusion of inconsistent positions.

determination and unsuccessfully challenged it. Then, without pay because of her asserted disability, she applied for temporary disability benefits and received them. What else was she to do? When those benefits were terminated because the state decided she was no longer disabled, she disagreed but was unsuccessful in challenging that determination. She then asked her employer to take her back, and the employer refused. So she brought suit under the ADA, claiming that she was able to perform her job. It is true that Fredenburg took inconsistent positions during this saga, but her employer and the state, considered together, were not treating her consistently either. She has not denied any of the representations she made; the court has not been misled. *Johnson*'s requisites for judicial estoppel are simply not met.[4]

Fredenburg was also subject to different definitions of disability for the purposes of state benefits and the ADA, but the district court made allowance for that divergence. As the district court recognized, state law provided benefits if Fredenburg was unable to perform her regular or customary work, without regard to possible accommodation. The ADA requires only that Fredenburg be able to perform all of the essential functions of her job, with or without reasonable accommodation. The district court held, however, that Fredenburg had not met her burden of showing a reasonable accommodation that would permit her to perform her job. *See Barnett v. U.S. Air, Inc.,* 157 F.3d 744, 749 (9th Cir.1998). Fredenburg only alludes to an accommodation tangentially, when she refers to the opinion of one of her physicians who opined that she might function better if transferred to another supervisor. Transfer to a vacant position may be considered a reasonable accommodation under the ADA in some circumstances. *See Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir.1993). But Fredenburg never identified a vacant position or indicated how transfer would enable her to perform the essential functions of her job.[5] The district court accordingly did not err in disregarding the fact that the state's definition of disability, unlike the ADA's, took no account of accommodation.

The fact remains, however, that the district court precluded Fredenburg from showing that she was qualified to perform her job without further accommodation. As we have stated, that invocation of judicial estoppel was inappropriate, because Fredenburg had not played fast and loose with, or committed a fraud on, the court. The summary judgment therefore cannot stand.[6]

---

**4.** In fairness to the district court, we note that it did not have the benefit of the *Johnson* opinion at the time it ruled.

**5.** Fredenburg contends that the district court ruled on summary judgment too precipitously, without allowing full discovery. The district court's original case management order required discovery to be completed by August 29, 1997, and ordered motions directed to Health Services' right to conduct a psychological examination to be filed in time for hearing on April 18, 1997. On the scheduled filing date, Health Services filed a motion for summary judgment that was not so limited; it sought summary judgment on all claims. Although Fredenburg may have been surprised, the summary judgment motion was properly noticed and nothing in the order or rules prevented Health Services from filing a general summary judgment motion. *See* Fed. R.Civ.P. 56(a). Fredenburg ultimately asked for a continuance for further discovery, but did not indicate to the district court what information was sought or what it intended to show. *See* Fed.R.Civ.P. 56(f). The district court therefore did not err in denying further discovery. In addressing the summary judgment motion, however, the district court focused on judicial estoppel, which necessarily eliminated the need for much factual development. On remand, the district court is not precluded from reopening discovery if it deems such action appropriate.

**6.** We disagree with the dissent's conclusion that our decision "allows people to slough off prior inconsistent representations when they become inconvenient." Fredenburg's earlier admissions, like those of any litigant, may be used in evidence against her. The trier of fact can take them into account in arriving at a decision. This ordinary process of decision-making will be allowed to work in Fredenburg's case. The only effect of our ruling is to

■ Fredenburg's complaint alleged that Health Services violated the ADA both when it initially placed her on leave and when it refused to take her back after her period of receiving state disability benefits. The district court did not focus particularly on the first claim. It may be that the court considered that claim to be precluded; the court's order notes that Fredenburg did not seek judicial review of the administrative determination upholding Health Services' action in placing her on leave. We wish to make clear, however, that, even though judicial estoppel is inappropriate with regard to this first claim, Fredenburg certainly would not be entitled to retain disability benefits and, at the same time, recover back pay for the same period on her claim that her employer violated the ADA by placing her on leave. Our ruling relieves Fredenburg of an untenable choice between disability benefits and an ADA claim, see *Johnson*, 141 F.3d at 1368, but it does not permit a double recovery based on inconsistent positions.

■ With regard to Fredenburg's second claim-that Health Services violated the ADA by not permitting her to return to work, there is an additional important factor to be considered. Fredenburg's disability was potentially temporary. The whole purpose of placing a person on leave is that he or she may eventually return to work. Indeed, we recently have held that leave on account of disability may itself be a reasonable accommodation under the ADA. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243 (9th Cir.1999). The state benefits that Fredenburg applied for and received were temporary, and the state terminated them when it found that Fredenburg was capable of returning to work. There was no conflict between temporary disability and apparent recovery. It was therefore error for the district court to conclude that a claimant's certification of disability during the period of leave is inconsistent with ability to return to work for ADA purposes.[7] *See id.* at 1246.

We conclude, therefore, that the district court erred in granting summary judgment in favor of the Health Services on Fredenburg's claim of disability discrimination. We accordingly reverse that ruling and remand for further proceedings.

### III

Fredenburg also challenged Health Services' required fitness-for-duty examination, alleging that it exceeds the scope permitted by the ADA.[8] The district court ruled that decision of this claim was controlled by its decision of Fredenburg's first ADA claim, because Fredenburg had to be a "qualified individual with a disability" in order to maintain a claim of improper medical examination. This ruling was erroneous, independently of the disposition of Fredenburg's first ADA claim, because Fredenburg does not have to be a "qualified individual with a disability" in order to have standing to invoke the ADA's protection against improper medical examinations.

Section 12112(d) of the ADA limits the scope of medical examinations employers may require employees to undergo to retain their jobs. Subsection (d)(1) provides a general prohibition against using medical examinations to discriminate; subsections (d)(2) through (d)(4) provide more detailed guidelines as to what is and is not allowed.[9]

avoid closing the courthouse door to Fredenburg at the outset, because of her admissions.

7. We recognize that Fredenburg challenged the state's determination that she was able to return to work. For reasons we have already stated, however, her unsuccessful assertion that she was unable to return to work was not a proper foundation for judicial estoppel because it did not indicate that Fredenburg was "playing fast and loose with the courts." *See Johnson*, 141 F.3d at 1369.

8. Fredenburg's complaint is unclear regarding her ADA challenge to the medical examination(s). The district court interpreted Fredenburg's complaint as raising an ADA claim with regard to the second examination, which Health Services required in September 1996 as a condition of Fredenburg's return to work. We follow the district court's example and deal with the second examination. The same information was sought by Health Services from both examinations, however.

9. The relevant portions of section 12112(d) provide:

The district court began its analysis with the general language of subsection 12112(d)(1), which states: "The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries." 42 U.S.C. § 12112(d)(1). Turning to subsection (a) of section 12112, the district court noted that it prohibits discrimination only against "a qualified individual with a disability." 42 U.S.C. § 12112(a). By this process, the district court concluded that only a qualified individual with a disability could bring a claim for violation of the ADA's restrictions on medical examinations.

This analysis was correct only so far as it went. Subsection (d)(1) states a general principle-medical examinations may not be used to discriminate against qualified persons with a disability-and categorically directs courts to treat medical examinations as possible evidence of discriminatory conduct. Within this context, only qualified individuals with a disability have a cause of action.

■ But the restrictive language of section 12112(a)-incorporated by reference in section 12112(d)(1)-does not apply to subsections (d)(2), (d)(3) and (d)(4). Those subsections set forth the types of examinations that are prohibited. In so doing, they refer to "employees," and "job applicants," not "qualified individuals with a disability." They do so for a reason: protecting only qualified individuals would defeat much of the usefulness of those sections. Under subsection (d)(2), for example, an employer could not require job applicants to take an HIV test unless the inquiry were shown to be job-related. This restriction prevents employers from using HIV tests to deter HIV-positive applicants from applying; requiring applicants challenging the test first to prove that they are in fact disabled-thereby revealing their HIV status-would render the section nugatory. We therefore reverse the decision of the district court and hold that plaintiffs need not prove that they are qualified individuals with a disability in order to bring claims challenging the scope of medical examinations under the ADA. The only other circuit to address the issue reached the same conclusion. *See Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1229 (10th Cir.1997).

■ Because the district court erroneously rejected Fredenburg's challenge to the medical examination on the ground of standing, it did not rule on the permissibility of the examination under the standards of the ADA. Section 12112(d)(4)(A) prohibits a "covered entity" from inquiring into whether an employee is an individual with a disability unless the "examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). The only reasonable reading of this language places the burden on the covered entity, here Health Services, to make the requisite showing. Health Services argues with considerable force that it has demonstrated both job-relatedness and business necessity, but these are both factual determinations that

(d) Medical examinations and inquiries
(1) In general
The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries.
. . . .
(4) Examination and inquiry
(A) Prohibited examinations and inquiries
A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.
(B) Acceptable examinations and inquiries
A covered entity may conduct voluntary medical examinations, including medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.
. . . .

we prefer to have the district court address in the first instance.

Health Services sought from the examining physician the answers to the following questions: (1) Are there conditions present in Ms. Fredenburg that endanger herself, her co-workers, or patients? (2) Can Ms. Fredenburg function as an independent professional psychiatrist? (3) Does Ms. Fredenburg suffer from a psychiatric impairment? (4) If so, what is the nature of that impairment? (5) Does the impairment substantially limit one or more of the activities of daily living? If so, please indicate those activities which are limited and the nature of the limitations? (6) What treatment plan, if any, do you recommend? [10]

Whether these questions, or other aspects of the required examination, were "job-related and consistent with business necessity," 42 U.S.C. § 12112(d)(4)(A), are factual and situational questions that we leave to the district court in the first instance. *See Yin v. California,* 95 F.3d 864, 867–69 & n. 8 (9th Cir.1996). Upon remand, the district court may conduct such further proceedings and allow such further discovery as it deems appropriate, in its discretion, for the resolution of this issue. *See* footnote 7, supra.

## IV

The district court dismissed Fredenburg's state-law claims without prejudice, choosing not to exercise its supplemental jurisdiction once it had resolved the federal claims on summary judgment. Because we reverse that judgment of the federal claims, we also reverse the dismissal of the state-law claims, to permit the district court once again to determine whether to exercise its supplemental jurisdiction in light of the proceedings on remand with regard to the federal claims.

## V

The judgment of the district court is reversed, and the matter is remanded to the district court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

WEINER, District Judge, concurring:

I concur with Judge Canby's decision that the protections of ADA §§ 12112(d)(2)–(4) are not limited to only "qualified individual[s] with a disability." I also agree that the conflicting opinions about Fredenburg's ability to work created a genuine dispute as to whether she could do her job. Judge Kozinski also appears to agree with these propositions. Finally, I agree with Judge Canby that Fredenburg was not playing fast and loose with the court when she asserted inconsistent positions when attempting to first keep her job, then keep her disability benefits, and then attempt to regain her job, a decision with which Judge Kozinski disagrees. Faced with different definitions of disability in qualifying for state disability benefits and maintaining an ADA claim, the elements of judicial estoppel have not been satisfied on the record before us and thus the entry of summary judgment on that basis was improper. I write separately only to stress that, upon remand, the district court is at liberty to determine in the first regard whether, under a straightforward summary judgment analysis, Fredenburg's claims fail a matter of law.

As the court stated in *Johnson v. Oregon,* 141 F.3d 1361, 1369 (9th Cir.1998), a "plaintiff's prior representations may be so strong and definitive that they will defeat the plaintiff's prima facie case on traditional summary judgment grounds." While judicial estoppel applies only to a "knowing misrepresentation to or even a fraud on the court," the holding of *Johnson* distinguishes chicanery from inadvertence or

**10.** Fredenburg's counsel insisted that the examination was overbroad, and advised Fredenburg not to consent to the disclosure of medical or psychiatric information other than

"whether or when, in the opinion of the health care provider, Ms. Fredenburg can safely return to work."

mistake. *Id.* Here we seem to confront a situation somewhere in the middle. Appellant appears to have simultaneously insisted to the state disability agency that she continued to be disabled when it sought to cut off her benefits, while seeking to maintain an ADA claim without requesting any specific accommodation. Adding further to the confusion, Fredenburg also claims discrimination based on her initial removal from work, arguing presumably that the County's claim that she suffered from paranoia was pretextual. While these inconsistent claims regarding her ability to work, return to work and inability to return to work might be satisfactorily explained, for example, by the nature of her psychological impairment, or the passage of time, on remand the district court is free to consider all this evidence in determining whether Appellant's claim can survive summary judgment or upon reaching the ultimate merits of her claims.

KOZINSKI, Circuit Judge, dissenting:

The majority manufactures a new defense to the bar of judicial estoppel—having a really good excuse for taking inconsistent positions. In so doing it creates a conflict with *Johnson v. Oregon,* 141 F.3d 1361 (9th Cir.1998), and *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597 (9th Cir.1996). *Johnson* went to great lengths to explain how the plaintiff's previous representations could be squared with her position that she was in fact a qualified individual with a disability. For example, it explained that her representations to the Social Security Administration were not inconsistent because "[t]he SSA neither asks nor considers whether individuals can work with accommodation." *Johnson,* 141 F.3d at 1370. What she represented to

Standard Insurance was not inconsistent because she explained that "although she [was] permanently disabled, she [could] nevertheless work, but only with reasonable accommodations." *Id.* Finally, in a letter to the IRS, she flatly represented that she was "totally disabled," which the panel found "troubling." *Id.* However, it found the inclusion of that representation in her handwritten letter to the IRS was not "an affront to the court sufficient to warrant judicial estoppel" because "[s]he was not seeking financial benefits from the agency, she was merely asking for leniency regarding her late tax return." *Id.* at 1370–71. No such reconciliation can be made here, and the majority doesn't even pretend it can.

The majority holds, correctly I believe, that Fredenburg has not proposed a reasonable accommodation. The only question left, then, is whether she can work without an accommodation. Fredenburg repeatedly represented to the state Employment Development Department (EDD) that she was incapable of performing her regular work.[1] She is now claiming that she *can* perform her regular work, and in fact could do so all along. There is absolutely no way to reconcile the two positions. This is very different than *Johnson,* where the seemingly inconsistent representations could be reconciled by noting that the employee said nothing about her ability to work with a reasonable accommodation. And her representations here differ radically from the third representation made by Johnson because, unlike a letter to the IRS explaining why a tax return was late, one would expect an applicant to be precise about the nature of her ability to work when making representa-

---

1. In order to qualify for state disability benefits, a claimant must be "unable to perform his or her regular or customary work" as a result of "his or her physical or mental condition." Cal. Unemp. Ins. Code § 2626 (West 1986). Although this doesn't mention the possibility of reasonable accommodation, the majority opinion doesn't rely on that distinction. Given the similarity of this language to that of the ADA, *see* 42 U.S.C. § 12111(8)

(defining a "qualified individual" as a person who "can perform the essential functions of the employment position that such individual holds"), I am puzzled by Judge Weiner's suggestion that this case turns on "different definitions of disability," *see* Weiner op. at 1183. Judge Weiner does not explain—nor do I believe he can—how the "different definitions of disability" make any difference in answering the question put to us.

tions to an agency whose business it is to pay disability claims.

The simple explanation is that Fredenburg told one story in one proceeding, and then, when it didn't get her what she wanted, she told a different and inconsistent story in another proceeding. The majority responds to Fredenburg's obvious mendacity with a rhetorical question: "What else was she to do?" Maj. op. at 1180. What Fredenburg was to do was to tell the truth at all times; that's the very essence of judicial estoppel. There is nothing wrong with expecting a plaintiff to respond truthfully to a simple question like whether she is able to perform her job. Although it may be asking too much to expect her to take into account the difference between being able to work with or without a reasonable accommodation, the majority's analysis doesn't pretend to be concerned with such niceties. Rather, Fredenburg is allowed to change her tune without penalty because she "had not played fast and loose with, or committed a fraud on, the court." Maj. op. at 1180–81.[2]

I'm quite unsure what this standard means or is intended to mean. Does "committing a fraud on the court" mean that we failed to learn of the prior representation, and thus the party was able to sneak one by us? Certainly Fredenburg did nothing to bring her prior representations to the attention of the district court, and they probably would not have come to light had the county not learned of them.[3] There is nothing Fredenburg could possibly have done to be any less forthright or more inconsistent than she was. If this be not "fast and loose," I'm not sure what is.

What I *am* sure of is that such a lax test for what constitutes "playing fast and loose" is contrary to binding precedent. In a very similar case, *Rissetto*, we noted "our concern that it might constitute 'playing fast and loose with the courts' for plaintiff to claim in 1990 that she was unable to perform her job in order to obtain workers' compensation benefits and to claim now that she was performing her job adequately in order to win damages in this suit." *Rissetto*, 94 F.3d at 601. Indeed, in that case we determined that the plaintiff was in fact trying to play fast and loose, and thus was judicially estopped from taking a new position in her FEHA suit. *See id.* at 606. *Johnson* did not, and could not, overrule *Rissetto*. The deception practiced by Fredenburg here is on all fours with that in *Rissetto*, and must lead to the same result.

The majority tries to rely on *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243 (9th Cir.1999), *see* maj. op. at 1181, but the cases are so different the citation only undercuts the majority's analysis. In *Nunes*, the plaintiff had suffered from syncopal episodes that caused her to faint at work but, after taking a leave of absence, she was cured. *See id.* at 1245–46. There is no inconsistency in taking a leave of absence and collecting disability benefits while admittedly disabled, then returning to work after one's health is restored. This does not in any way describe Fredenburg. Fredenburg nowhere alleges or suggests that she had a problem and needed time off to get well. Instead, she complains of her "pretext[ual]" termination at the hands of the county. *See* Complaint ¶ 11. Admittedly, she references a letter

---

2. The majority also excuses Fredenburg's conduct because "her employer and the state, considered together, were not treating her consistently either." Maj. op. at 1180. But Fredenburg's employer and the disability office were different parties who had no obligation to take consistent positions. Even if inconsistency by a single party opponent were a defense to judicial estoppel, I don't see how one could meld the conduct of two unrelated parties for that purpose.

3. Not only did Fredenburg fail to forthrightly admit to her prior representations, in this court she argued that the district court's decision to take notice of her application for benefits was an abuse of discretion. *See* Appellant's Br. at 10–11. That pretty much refutes the majority's contention that "[s]he has not denied any of the representations she made." Maj. op. at 1180.

from one of her physicians stating that she would be able to return to work after recovering from her "adjustment disorder" on January 16th; but she obviously didn't believe that doctor's opinion—she continued to accept disability benefits after January 16th, and then represented to the EDD in May, four months later, that she remained disabled and unable to perform the functions of her job. Nor does Fredenburg's brief suggest that she was once sick and then got better; rather, she objected to the district court's taking judicial notice of the "unsubstantiated hearsay" contained in her EDD applications, Appellant's Br. at 10, railed against the county's "belie[f] that appellant was suffering from a personality disorder," *id.* at 12, and then admitted that "out of financial desperation ... [she] applied for and received Social Security [sic, state] disability benefits," *id.* at 13. Although her illness was "potentially" temporary, nowhere does she allege that she was disabled during the time that she was collecting benefits, and then later got better, as did Nunes. *Nunes* has no application here, and to suggest that it does belittles the claims of honest plaintiffs who admit to taking disability benefits during a leave of absence in which they seek to recover from a disability.

I also note that we have given the district court no guidance as to what to do on remand—or perhaps too much guidance. The majority opinion doesn't appear to leave any room for the district court to grant summary judgment on Fredenburg's claims. Judge Weiner concurs in that opinion, yet strangely suggests that the district court could nevertheless grant summary judgment in favor of the county. *See* Weiner op. at 1184. I don't get it. Given that we all agree that there was a genuine issue of fact as to whether Fredenburg could do her job, and given that the majority disavows the use of judicial estoppel, I can't see any way in which the district court could properly grant summary judgment. Because the district court cannot preclude Fredenburg's claims based on her previous representations, it would have to weigh the evidence present-

ed by Fredenburg and the county in order to grant summary judgment. What am I missing here?

In sum, the majority opinion guts the doctrine of judicial estoppel, which has previously been followed in this circuit. The majority forthrightly admits this when it allows that "Fredenburg's earlier admissions, like those of any litigant, may be used in evidence against her." Maj. op. at 1180 n. 6. Of course a party's prior statements are always admissible at trial, so long as they meet the test of relevancy under FRE 401. But prior inconsistent representations made in a judicial proceeding are not merely admissible—they are preclusive. That is the heart and soul of judicial estoppel. By saying that prior judicial statements are to be treated just like prior statements made to a fish merchant or a fortune teller, the majority drives a stake through the heart of the doctrine of judicial estoppel.

I agree with the core holding of *Johnson* that representations made to disability agencies should be read narrowly so as not to automatically preclude ADA plaintiffs from pursuing the remedies that Congress has granted to them. However, I cannot agree with the majority here that sworn statements on applications for disability benefits—which result in the payment of cash benefits—should be granted no more weight than statements made in casual conversation. The majority's approach allows people to slough off prior inconsistent representations when they become inconvenient, much like a snake sheds its skin. It is one thing to allow a plaintiff to explain how her previous representations were actually truthful and consistent with what she claims today, as did *Johnson;* it is a far different thing to look away from a plaintiff's previous representations with a wink and a nudge because she was "forced" to lie in order to fenagle benefits from the welfare state. Because the majority opinion is at loggerheads with dec-

ades of precedent in our circuit and elsewhere, I dissent.