**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| COSMO COLARUOTOLO, | No. 16-72856 |
| Petitioner, | BRB No. 16-0066 |
| v. | |
| SSA CONTAINERS, INC.; HOMEPORT INSURANCE CO.; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAM, | MEMORANDUM* |
| Respondents. | |

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted April 12, 2018
Pasadena, California

Before: ROGERS,** BYBEE, and WATFORD, Circuit Judges.

Petitioner Cosmo Colaruotolo worked for several decades as a longshoreman

in the Los Angeles Harbor, performing various roles. He suffered several work-

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable John M. Rogers, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

related injuries throughout the years, consequently undergoing numerous back surgeries and spinal fusions. After his final injury in 2010, Petitioner sought permanent total-disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 908, from his employer and its insurance carrier (collectively, "Respondents"). Although an Administrative Law Judge ("ALJ") initially granted these benefits, he later granted Respondents' motion for reconsideration, holding that Petitioner was able to work as a tower clerk and that this position was reasonably available. The Benefits Review Board ("the Board") affirmed in a divided decision. Petitioner now seeks review before this court.

We have jurisdiction under 33 U.S.C. § 921(c). "It is well settled that the Board's findings may not be disturbed unless they are unsupported by 'substantial evidence on the record considered as a whole.'" *Cordero v. Triple A Mach. Shop*, 580 F.2d 1331, 1333 (9th Cir. 1978) (quoting *Banks v. Chi. Grain Trimmers Ass'n*, 390 U.S. 459, 467 (1968)). This includes the finding of whether there is suitable alternate work reasonably available to an employee. *See Bumble Bee Seafoods v. Dir., Office of Workers' Comp. Programs*, 629 F.2d 1327, 1329–30 (9th Cir. 1980). We grant the petition.

In holding that the tower-clerk position would be available to Petitioner at least three days a week, the ALJ relied solely on the opinion of Respondents'

2

vocational expert ("VE"). The ALJ originally concluded that the VE had opined that this position's availability was "speculative." However, the ALJ later reversed course, finding that "a fairer reading" of the VE's deposition testimony was that the tower-clerk position was available *at least* three days a week and "that the speculation related to whether [Petitioner] could obtain the tower clerk position . . . four or five days per week."

This conclusion is unsupported by substantial evidence for several reasons. First, a complete reading of the VE's testimony reveals that he was unwilling to unequivocally state that the tower-clerk position would be available even three days a week. For instance, when Petitioner's counsel asked the VE what information led him "to the conclusion that that much tower clerk work *would be* available to" Petitioner, the VE first responded by correcting counsel's portrayal of his testimony: "*Could* be available to him." Moreover, the VE stated soon after that "there is a great deal of politics that goes on on the waterfront when it comes to jobs that workers do. And no . . . greater impact are these forces than on . . . tower clerk[s] or accommodating kinds of work." He then acknowledged that the position's availability is "difficult to nail down . . . ." And, perhaps most telling, when counsel asked whether the VE's assessment was "actually speculative given

all the inanimate forces," the VE responded affirmatively and confirmed that "we can't put a hard number on it[.]"

The Board did not confront these statements in concluding that the tower-clerk position would be reasonably available to Petitioner. Rather, the Board merely portrayed the issue as a conflict in testimony between Respondents' VE and Petitioner's VE—who estimated the position is available only three to four times *a month*—and ultimately deferred to the ALJ's weighing of the evidence. But a full reading of the testimony discussed above does not convey any sense of assurance that the tower-clerk position would be reasonably available to Petitioner.

Second, the findings by Respondents' VE were premised on demonstrably incorrect information. The VE explicitly based his availability conclusion in part on Petitioner's purported statements (1) that tower clerk was Petitioner's preferred position before his final accident and (2) that he could obtain at least three days of work if he showed up to the casualty board five or six days a week. When Petitioner's counsel asserted that Petitioner never made these statements, the VE referred to his notes from their meeting. But contrary to the VE's recollection, his own notes reflect that Petitioner stated that the position is "rarely available" and that Petitioner previously worked the position only "occasionally." Petitioner also testified to these facts during the hearing before the ALJ, and his employment

4

records reveal that he never worked the tower-clerk position during his final period of employment before his latest injury. The Board, however, erroneously perceived this issue as a conflict in evidence rather than a defect in the VE's underlying information.

Additionally, the VE's analysis regarding the tower-clerk position's availability does not take into account the fact that Petitioner medically retired from his union in 2011. It is therefore unclear whether Petitioner's union seniority remains intact, which is a factor critical to the distribution of jobs at the Los Angeles Harbor, even absent disability accommodations. *See Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 739 (9th Cir. 1999). Respondents argue that we should not take this fact into consideration because Petitioner chose to medically retire. Petitioner persuasively counters, however, that he only medically retired between his third and fourth surgeries and that it would be unreasonable to require him to maintain his union status and pay dues when he perceived no reasonable likelihood of returning to work. Moreover, union seniority is a relevant factor that must be considered when analyzing whether Petitioner could realistically obtain the tower-clerk position. *Cf. Hairston v. Todd Shipyards Corp.*, 849 F.2d 1194, 1195–96 (9th Cir. 1988) (concluding that the Board erred in holding that the ALJ, in assessing the availability of suitable alternate work, should not take into account

5

the fact that the employee's prior criminal conviction barred him from obtaining a position at a bank).

Finally, the ALJ and Board failed to consider the fact that Petitioner had ample incentives to return to work as a tower clerk if the position was readily available to him. Upon being transferred to the clerk's union, Petitioner's salary would have nearly doubled and his pension payments would have increased by approximately $1000 per month when he took full retirement after three more years of work. Absent being disabled or not having the position available, it is difficult to imagine that an employee would decline to work in such a relatively non-strenuous clerical position until full retirement and thereby forego significant financial benefits.

When these issues are considered collectively, it is evident that the ALJ and the Board's findings regarding the availability of the tower-clerk position are unsupported by substantial evidence.[1] We therefore **GRANT** the petition for review and remand for an award of permanent total-disability benefits.

---

[1] Because this conclusion is dispositive to Petitioner's disability claim, we need not reach his other arguments.

No. 16-72856
*Colaruotolo v. SSA Containers Inc.*

ROGERS, Circuit Judge, dissenting.

I would deny the petition for review. On substantial-evidence review, under which we review the Board's findings, *Cordero v. Triple A Mach. Shop*, 580 F.2d 1331, 1333 (9th Cir. 1978), we defer to the decision below unless the evidence compels the contrary conclusion, *cf. Avetova-Elisseva v. INS*, 213 F.3d 1192, 1196 (9th Cir. 2000) (citing *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995)). The evidence before the Board was not so deficient as to warrant reversal under that deferential standard.

The finding that the tower-clerk job was available to Colaruotolo was reasonable. Although Stauber was not willing to state unequivocally that the tower-clerk position would be available to Colaruotolo no less than three days per week, testimony need not be unequivocal to count as substantial evidence. Because the ALJ's interpretation of Stauber's testimony was permissible, it qualifies as substantial evidence.

The information on which Stauber based his testimony was not inherently flawed. The notes from Stauber's conversation with Colaruotolo are scribbled and probative of very little. In any event, Stauber based his conclusion not only on his discussions with Colaruotolo, but also on discussions with multiple other clerks in similar situations and with terminal managers. Therefore, there is no indication that Stauber based his conclusion on demonstrably incorrect evidence.

Colaruotolo's voluntary retirement from the union does not help his case. If that is enough to defeat SSA's showing of alternative employment, it is difficult to imagine how this system could function when, to defeat a finding that there exists available union employment, any union-member claimant could retire from their union, thereby likely eliminating most, if not all, of the jobs that would otherwise be available.

Based on the totality of the record, the ALJ's decision was not so wrong as to warrant reversal on substantial-evidence review.