**Gordon KOHNKE, Plaintiff,**

v.

**DELTA AIRLINES, INC., Defendant.**

**No. 93 C 7096.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 10, 1996.

Robert A. Wolf, Robert A. Wolf and Associates, Chicago, IL, for plaintiff.

Max G. Brittain, Jr., Mary Aileen O'Callaghan, Wendy L. Nutt, Brittain, Sledz, Morris & Slovak, Chicago, IL, for defendant.

---

*MEMORANDUM OPINION AND ORDER*

ANNE CLAIRE WILLIAMS, District Judge.

 In its Minute Order dated 6/20/96, the court declined to reconsider Magistrate Judge Guzman's ruling that if the evidence warrants a "direct threat" jury instruction, the instruction should refer to a direct threat to others *or to Kohnke himself.* Upon further research and reflection, the court now grants Kohnke's motion to reconsider that "direct threat" ruling. For the reasons stated below, the court concludes that any "direct threat" jury instruction must refer to a direct threat to others, not a direct threat to Kohnke himself.

The Americans With Disabilities Act ("ADA") makes it unlawful to "discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). Discrimination includes, among other things,

> using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.

42 U.S.C. § 12112(b)(6). In keeping with this definition of discrimination, the ADA provides:

> It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

42 U.S.C. § 12113(a). In this context, "[t]he term 'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). And "[t]he term 'direct threat' means a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3).

In regulations interpreting the ADA, the Equal Employment Opportunity Commission ("EEOC") has addressed the "direct threat" issue at some length. *See* 29 C.F.R. § 1630.2(r) and 29 C.F.R. § 1630, Appendix § 1630.2(r). The EEOC regulations state that *"Direct Threat* means a significant risk of substantial harm to the health or safety *of the individual or others* that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r) (second emphasis added). According to the EEOC regulations, "[a]n employer may require, as a qualification standard, that an individual not pose a direct threat to the health or safety *of himself/herself or others."* 29 C.F.R. § 1630, Appendix § 1630.2(r) (emphasis added). After discussing harm to others, the EEOC regulations state unequivocally:

> An employer is also permitted to require that an individual not pose a direct threat of harm *to his or her own safety or health.* If performing the particular functions of a job would result in a high probability of substantial harm to the individual, the employer could reject or discharge the individual unless a reasonable accommodation that would not cause an undue hardship would avert the harm.

*Id.* (emphasis added). In sum, the EEOC regulations interpret the term "direct threat" under the ADA to include not only a direct threat to others, but also a direct threat to the disabled person himself.

 The EEOC's interpretation of the "direct threat" language in the ADA is untenable, because it renders certain words in the ADA meaningless. If the ADA referred to "a direct threat to health or safety in the workplace," then the EEOC's interpretation would make sense. However, the ADA clearly and unambiguously refers to "a direct threat to the health or safety *of other individuals* in the workplace." 42 U.S.C. § 12113(b) (emphasis added). If the EEOC's interpretation were accepted, it would render entirely meaningless the

phrase "of other individuals." Such an interpretation must be rejected in light of the general rule that "a court should not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous." *Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1272 (7th Cir.) (citation omitted), *cert. denied*, 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). This conclusion receives further support from the definitional section of the ADA, which states that "[t]he term 'direct threat' means a significant risk to the health or safety *of others* that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3) (emphasis added). Again, the EEOC's interpretation would render meaningless the words "of others," and it must be rejected for this reason. *See generally Robbins v. Bentsen*, 41 F.3d 1195, 1198 (7th Cir.1994) ("Regulations cannot trump the plain language of statutes."); *Coghlan v. H.J. Heinz Co.*, 851 F.Supp. 808, 813 (N.D.Tex.1994) (rejecting EEOC interpretation of ADA that court found to be "at odds with clear statutory language").

Because the "direct threat" language in the ADA is clear and unambiguous, there is no need to consult the legislative history of the ADA. *See, e.g., Barnhill v. Johnson*, 503 U.S. 393, 401, 112 S.Ct. 1386, 1391, 118 L.Ed.2d 39 (1992) ("[A]ppeals to statutory history are well taken only to resolve 'statutory ambiguity.'") (citation omitted); *In Re McFarland*, 84 F.3d 943, 947 (7th Cir.1996) ("[T]here is no need to examine legislative history where the words of a statute are clear.") (citations omitted). In any event, the legislative history provides little support for the EEOC's view that a "direct threat" includes a threat to the plaintiff himself. The Report of the House Judiciary committee explains that the "direct threat" language in the ADA codifies the Supreme Court's holding in *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987): that a "person who poses a significant risk of communicating an infectious disease *to others* in the workplace will not be otherwise qualified for his or her job if reasonable accommodation will not eliminate that risk." H.R.Rep. No. 485, part 3, 101st Cong., 2d Sess., at 45 ("House Judiciary Report"), 1990 U.S.Code Cong. & Ad-

min.News 267 at 468 (quoting *Arline*, 480 U.S. at 287 n. 16, 107 S.Ct. at 1131 n. 16) (emphasis added). The House Judiciary Report notes that the ADA extends this standard "to all individuals with disabilities, and not simply to those with contagious diseases or infections," House Judiciary Report at 45, 1990 U.S.Code Cong. & Admin.News at 468, but it says nothing about extending the standard to a disabled person harming himself as opposed to other individuals. Indeed, the House Judiciary Report mentions threat or risk "to other individuals" or "to others" nine times, *id.* at 45–46, without once mentioning threat or risk to the disabled person himself. This pattern is apparent throughout the legislative history of the ADA. *E.g.*, H.R.Rep. No. 485, part 2, 101st Cong., 2d Sess., at 56 (Report of House Committee on Education and Labor); S.Rep. No. 116, 101st Cong., 1st Sess., at 27 (Report of Senate Committee on Labor and Human Resources).

Although the plain language and legislative history of the ADA suggest that the EEOC regulations misinterpret the "direct threat" defense, this court has been unable to locate any case in any court that squarely addresses the issue. Many cases address the kind of proof that a defendant must offer in order to prevail on a direct threat defense. *E.g., Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763–64 (5th Cir.1996). Typically, these cases quote both the text of the ADA and the EEOC regulations. *E.g., id.* at 763. Because these cases involve threats to "other individuals" rather than (or in addition to) threats to the disabled person himself, they have not led the courts to consider the difference between the language of the statute and the regulations at issue here. An exception is *Devlin v. Arizona Youth Soccer Ass'n*, No. CIV 95–745 TUC ACM, 1996 WL 118445 (D.Ariz. Feb. 8, 1996). In that case, the defendant asserted a "direct threat" defense, arguing that "[p]laintiff's participation in competitive youth soccer will pose a substantial risk of harm to him." *Id.* at *4. Plaintiff apparently moved to strike the defense, arguing that the ADA "limit[s] the direct threat defense to threats to others." *Id.* The court denied plaintiff's motion to strike, stating without analysis that "there

are questions of fact and law which exist regarding this issue." *Id.* The *Devlin* opinion has little precedential value here, inasmuch it comes from a distant district court, it is unpublished, and it presents no real analysis of the issue it raises.

Having considered the plain language, legislative history, and relevant caselaw (such as it is), the court concludes that any jury instruction on "direct threat" must refer to a direct threat to other individuals, not a direct threat to the disabled person himself. Although potential harm to a disabled person himself is not contemplated in the narrow "direct threat" language of 42 U.S.C. §§ 12113(b) and 12111(3), such potential harm may still be relevant to the broader language of 42 U.S.C. §§ 12112(b)(6) and 12113(a). For example, the fact that a person with a certain disability would injure himself on the job could provide evidence that an employer's qualification standards or selection criteria are "job related and consistent with business necessity." *Id.*

In addition to shaping any direct threat jury instruction, the court's conclusion may affect its evidentiary rulings before and during trial. For example, Delta apparently wishes to present evidence showing that Kohnke has a history of injuring himself on the job.[1] If such evidence is relevant only to a direct threat jury instruction, it will be excluded. Such evidence may be relevant in other ways, however. For example, it may tend to show that Kohnke is not a "qualified individual" under 42 U.S.C. §§ 12112(a) and 12111(8).

For the reasons stated above, the court grants Kohnke's motion to reconsider Magistrate Judge Guzman's "direct threat" ruling. The court's Minute Order dated 6/20/96 is amended as follows: Kohnke's motion to reconsider certain rulings in Magistrate Judge Guzman's Report and Recommendation is granted. If the evidence warrants a "direct threat" jury instruction, the instruction must

refer to a direct threat to others, not a direct threat to Kohnke himself.

---

1. Specifically, Delta apparently wishes to present a chart summarizing the injuries Kohnke suffered as a baggage customer service agent. Kohnke objects to this evidence. The court is

not now in a position to rule on the issue because the parties have not had the opportunity to shape their arguments in light of this Memorandum Opinion and Order.