**Vera L. NUNES, Plaintiff–Appellant,**

v.

**WAL–MART STORES, INC.; Mike Black; Rita Silva, Defendants–Appellees.**

No. 97–17147.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1998.

Decided Jan. 28, 1999.

Claudia Center, The Employment Law Center, San Francisco, California, for the plaintiff-appellant.

David F. Faustman, Faustman, Carlton, DiSante & Freudenberger, San Francisco, California, for the defendants-appellees.

Before: FLETCHER, FERGUSON and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Vera L. Nunes ("Nunes") appeals the district court's summary judgment in favor of Wal–Mart Stores ("Wal–Mart") in her action under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Nunes contends the district court erred in concluding that she was not a "qualified individual with a disability" under the ADA. In addition, Nunes argues the district court erred in determining that she posed a "direct threat" to others because of her disability. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## BACKGROUND

In early 1994, Nunes became a regular sales associate for Wal–Mart. Wal–Mart's benefits included short-term medical leaves of absence for up to one year. For many years prior to her employment at Wal–Mart, Nunes suffered from a fainting disorder that caused episodes during which she lost consciousness. These "syncopal episodes" varied in frequency, and in late 1995 were diagnosed as being stress-related.

Nunes had the first syncopal episode while working for Wal–Mart in March 1994. After Nunes suffered two episodes in April (one at work), she went out on medical leave until the end of July. Nunes returned to work and worked without incident for six months, but then had two more syncopal episodes at work in February 1995. No injuries to Nunes or anyone else occurred because of the incidents at work, and Nunes was able to continue working subject to a 15–pound lifting restriction. On March 3, 1995, however, Nunes fainted while walking to the break room, breaking her glasses and cutting her eyebrow.

With the encouragement of Wal–Mart, Nunes began an extended medical leave of absence on March 3, 1995, for diagnosis and treatment of her condition. In applying for California temporary disability benefits ("SDI"), Nunes and her doctor certified that Nunes was incapable of performing her "regular or customary work." Nunes's physician listed March 7, 1995, as the day her disability commenced and May 1, 1995, as an estimated date when she could return to work.

After May 1, various doctors provided Wal–Mart with documentary proof of Nunes's illness, indicating her continuing inability to return to work because she was still suffering from fainting episodes. One doctor's certification stated that Nunes would be unable to return to work until November 15, 1995. Another doctor certified that Nunes would be unable to work from August 1, 1995, until December 1, 1995.

During October 1995, Nunes was hospitalized and learned stress-reduction exercises to help control her disorder. Some time before October 27, 1995, while Nunes was in the

hospital, a Wal–Mart personnel manager tried to phone her, but found her phone line disconnected. The manager learned that Nunes was in the hospital, but did not try to contact her there. Contrary to Wal–Mart's policy, the personnel manager did not send Nunes a certified letter inquiring about her status and giving her three days to respond before final termination. Instead, the store manager terminated Nunes on October 27, 1995.

The manager later told Nunes she had been terminated because of her failure to submit leave of absence forms and because Wal–Mart needed someone to fill her position during the holidays. Nunes had her last syncopal episode in December 1995. She became a cashier at McDonald's beginning in April 1996 and has remained in that position ever since without any fainting incidents.

In her complaint, Nunes alleged twelve causes of action, including claims under the ADA, the Family and Medical Leave Act, the California Family Rights Act, the California Fair Employment and Housing Act, as well as state tort claims. The district court granted summary judgment in favor of Wal–Mart on all claims. In this appeal, however, Nunes limits the issues to the district court's summary judgment on her ADA claim.

## DISCUSSION

### A. Standard of Review

We review de novo a grant of summary judgment. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there is a genuine issue of material fact and whether the district court correctly applied the relevant substantive law. *See id.*

### B. Qualified Individual with a Disability under the ADA

The district court determined that Nunes was not a qualified individual with a disability under the ADA. It did so on the alternate grounds that (1) her statements in her application for SDI benefits precluded a recovery on her ADA claim and (2) her doctors had certified in connection with her SDI application that Nunes could not perform the essen-

tial functions of her job on the date she was terminated. We conclude the court erred on both grounds.

■ The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). Thus, to state a prima facie case under the ADA, Nunes must show that (1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual, meaning she can perform the essential functions of her job; and (3) Wal–Mart terminated her because of her disability. *See Kennedy v. Applause*, 90 F.3d 1477, 1481 (9th Cir.1996).

The ADA further defines the second prong of the prima facie case, "qualified individual with a disability," as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(m).

■ Relying on *Kennedy*, the district court held that "Nunes must be precluded from claiming that she was 'qualified' under the ADA because she made inconsistent remarks when she applied for and received state disability insurance benefits." *Kennedy* does not dictate this conclusion. *Kennedy* applied traditional summary judgment principles in considering the statements the plaintiff made seeking state disability benefits. *Kennedy*, 90 F.3d at 1477. Indeed, we have joined the majority of circuits in holding that "neither application for nor receipt of disability benefits *automatically* bars a claimant from establishing that she is a qualified person with a disability under the ADA." *Johnson v. Oregon*, 141 F.3d 1361, 1367 (9th Cir. 1998) (emphasis in original). Thus, the district court erred in determining that, because Nunes applied for SDI benefits, she was precluded from claiming she was a qualified individual under the ADA.

■ The district court also erred in determining that Nunes was totally disabled on the date of her termination. It is undisputed that, during the period of Nunes's medical leave leading up to her termination, her doctors continued to state that she was incapacitated and unable to return to work. Relying on these certifications during this period, the

district court concluded that Nunes was totally disabled and therefore unqualified under the ADA.

■ By focusing on Nunes's disability during the period of her medical leave, however, the district court misapplied the ADA's "qualified individual" requirement. The ADA requires that Nunes be able to perform the essential functions of her job "with or without reasonable accommodation." 42 U.S.C. § 12111(8). Unpaid medical leave may be a reasonable accommodation under the ADA. *See* 29 C.F.R. Part 1630, Appendix (discussing § 1630.2(*o*)). Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer. *See* 42 U.S.C. § 12111(9), (10); *Norris v. Allied–Sysco Food Servs., Inc.*, 948 F.Supp. 1418, 1438 (N.D.Cal.1996). If Nunes's medical leave was a reasonable accommodation, then her inability to work during the leave period would not automatically render her unqualified.

■ Determining whether a proposed accommodation (medical leave in this case) is reasonable, including whether it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry. *See Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1080 (6th Cir.1988) (reversing grant of summary judgment in a Rehabilitation Act claim). In the summary judgment context, a court should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation. *See, e.g., Barnett v. U.S. Air, Inc.*, 157 F.3d 744, 752 (9th Cir.1998); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) (both affirming summary judgment because the plaintiff failed to raise material issue that the requested accommodation was reasonable).

The record indicates that Nunes was a good employee who had received "above average" performance ratings. She went out on medical leave with the blessing of Wal–Mart, whose stated benefits policy included unpaid medical leave of up to one year. Throughout the leave period, Nunes submitted doctors' certifications to Wal–Mart indicating that she would be unable to work until November or December 1995. When she was terminated in October 1995, she had been on medical leave for seven months and was learning stress reduction techniques to control her symptoms.

Nunes has raised a genuine issue of material fact as to whether her medical leave, projected to extend to November or December 1995, was a reasonable accommodation. An issue of fact also exists as to whether the accommodation sought would impose an undue hardship on Wal–Mart. Weighing against Wal–Mart on these issues are its stated benefits policy that eligible employees could take up to one year of unpaid medical leave, and its regular practice as a large retailer of hiring temporary help during the holiday season.

We conclude that genuine issues of material fact exist pertaining to Nunes's qualified status under the ADA.

## C. Direct Threat Defense

■ Even though Nunes raised genuine issues of material fact as to her qualified status, summary judgment would still be appropriate under the ADA if Nunes posed "a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). Because this is an affirmative defense, Wal–Mart bears the burden of proving that Nunes is a direct threat. *See Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 764 (5th Cir.1996); *Equal Employment Opportunity Comm'n v. Union Pacific Railroad*, 6 F.Supp.2d 1135, 1138 (D.Idaho 1998).

The ADA defines "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). In regulations interpreting the "direct threat" issue, the Equal Employment Opportunity Commission ("EEOC") has stated that direct threat "means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r).[1]

---

1. The ADA mentions only threats to others, whereas the EEOC regulations expand the term "direct threat" to include threats to the disabled

To protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear, the Supreme Court has required an individualized direct threat inquiry that relies on the best current medical or other objective evidence. *See Bragdon v. Abbott,* —— U.S. ——, ——, 118 S.Ct. 2196, 2210, 141 L.Ed.2d 540 (1998); *School Board of Nassau County, Fla. v. Arline,* 480 U.S. 273, 287, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); 29 C.F.R. § 1630.2(r). Specific factors to be considered include (1) the duration of risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm. *See Arline,* 480 U.S. at 287, 107 S.Ct. 1123; 29 C.F.R. § 1630.2(r).

▮▮▮ In evaluating a direct threat defense, a court should first consider whether the employer has demonstrated that the employee cannot perform the job without a significant risk of harm. *See* 29 C.F.R. § 1630.2(r); *Mantolete v. Bolger,* 767 F.2d 1416, 1422 (9th Cir.1985) (reversing district court's decision that a Rehabilitation Act claimant with epilepsy would pose a direct threat if she were employed as a letter sorting operator).[2] If the court determines that such a risk is posed, then it must ask whether the employer can make a reasonable accommodation, without undue hardship to the employer, so that the employee can perform her job without such risk. *See Mantolete,* 767 F.2d at 1423. Such an analysis necessarily requires the employer to gather "substantial information" about the employee's work history and medical status, and disallows reliance on subjective evaluations by the employer. *Id.* at 1422; *see also Bragdon,* 118 S.Ct. at 2210.

▮▮▮ The district court determined that Nunes posed a direct threat to the customers of Wal–Mart. The court based this conclusion on three factors: (1) Nunes's prior syncopal episodes at work, including one where she required stitches to her eyebrow; (2) the manager's "legitimate fear" that Nunes was a direct threat to others; and (3) Nunes's doctor's deposition testimony taken two years after the termination decision that it was "possible" that Nunes could hurt herself or others if she suffered an attack while carrying something heavy over her head.

Wal–Mart did not present any evidence about Nunes's medical condition at the time she was terminated. The deposition testimony of Nunes's doctor, taken two years after the termination decision was made, obviously was not available to Wal–Mart at the time Nunes was terminated. Moreover, this testimony does not support the conclusion that Nunes posed a significant risk to others. The doctor testified that any risk of harm posed by Nunes was "extremely unlikely." Defense counsel then asked the doctor if Nunes would pose a risk to others if she carried something heavy over her head, fainted, and dropped the item onto someone else. The doctor answered that such a scenario was "possible" but "very unlikely." Such testimony does not establish significant risk as a matter of law. At most, it raises a genuine issue of material fact as to Nunes's risk of harm to others.

Moreover, the record contains no evidence that Wal–Mart considered any at-work accommodations to reduce the risks it feared. For example, even though Wal–Mart feared that Nunes might drop a heavy item lifted over her head, there is no evidence that Wal–Mart considered an accommodation to avoid such lifting. Given Nunes's job duties as a cashier, such an accommodation seems feasible. *See Mantolete,* 767 F.2d at 1423 (court should consider whether employer could have made reasonable accommodation that would

---

person herself. We have not yet ruled on whether the direct threat defense includes threats to one's self and decline to do so in the present case because the issue was not addressed in the district court and has not been properly presented in this appeal. We note, however, that two courts in other circuits have considered this issue and have reached different results. *Compare Kohnke v. Delta Airlines,* 932 F.Supp. 1110, 1111 (N.D.Ill.1996) (holding that expansion of the ADA to encompass threats to self is "untenable"

because the ADA mentions only threats to others), *with Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 447 (11th Cir.1996) (holding that direct threat under the ADA includes threats to self).

**2.** Interpretations of the ADA are guided by Rehabilitation Act precedent. *See Yin v. California,* 95 F.3d 864, 867 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 955, 136 L.Ed.2d 842 (1997).

have eliminated or reduced the direct threat of harm); *see also* 42 U.S.C. § 12111(3).

## CONCLUSION

Nunes has raised genuine issues of material fact concerning whether the medical leave she sought was a reasonable accommodation that would have permitted her to perform the duties of her job without imposing an undue hardship on her employer, and without a direct threat of injury to others. Summary judgment dismissing Nunes's ADA claim was therefore inappropriate. That judgment is reversed, and this case is remanded to the district court for further proceedings.

REVERSED AND REMANDED.