Douglas LOWE, Plaintiff-Appellant,

v.

ALABAMA POWER COMPANY, Defendant-Appellee.

No. 99-11179.

United States Court of Appeals,

Eleventh Circuit.

March 23, 2001.

Appeal from the United States District Court for the Northern District of Alabama.(No. 97-01340-CV-S-E), C. Lynwood Smith, Jr., Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and SHAPIRO[*], District Judge.

BIRCH, Circuit Judge:

Douglas Lowe appeals the district court's grant of summary judgment to Alabama Power Company in his suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* for discrimination, failure to accommodate and retaliation. Lowe urges us to reverse our holding in *Moses v. American Nonwovens, Inc.,* 97 F.3d 446 (11th Cir.1996), in which we determined that "[t]he employee retains at all times the burden of persuading the jury either that he was not a direct threat or that reasonable accommodations were available." *Id.* at 447. He also argues that 29 C.F.R. § 1630.2(r), which defines a direct threat as "a significant risk of substantial harm to the health or safety of the individual or others," impermissibly broadens the definition provided by statute because it includes a risk of injury to the disabled employee as well as to others. We need not address these issues, however, because, since Alabama Power's company physician did not base his decision to restrict Lowe's work activity on a timely, particularized assessment of Lowe's capabilities, summary judgment was improperly granted. Accordingly, we REVERSE and REMAND.

I. BACKGROUND

Lowe has been an employee of Alabama Power since 1969. In 1990, Lowe was injured in an accident at the E.C. Gaston steam plant, where he worked as a welder. As a result, both of his legs were amputated below the knees and he now wears prostheses. Lowe returned to work at the plant in 1992 and held a variety of office positions, but continued to be classified and paid according to his pre-injury status as a journeyman,

---

[*]Honorable Norma L. Shapiro, District Judge for the Eastern District of Pennsylvania, sitting by designation.

a position covered by the collective bargaining agreement ("CBA") between Alabama Power and the union.

In July 1994, Lowe took a leave of absence from work due, in part, to infection in his legs. In October 1994, while Lowe was still on leave, he met for about an hour with Alabama Power's physician, Doctor Carmichael. Dr. Carmichael conducted a "cursory" examination, looking briefly at Lowe's legs. At the time of the examination, Lowe was classified as a journeyman, but it was unclear what his specific job would be when he returned to work. This examination was Dr. Carmichael's and Lowe's only meeting. In March 1995, Lowe's condition improved, and he returned to work in a warehouse position. In July 1995, nine months after their only meeting and four months after Lowe returned to work, Carmichael imposed work restrictions on Lowe. Carmichael limited both the weight Lowe could lift and the height to which he could climb, and prohibiting him from working at unprotected elevations. Carmichael also restricted Lowe to driving non-commercial vehicles and required that any company vehicle operated by Lowe have hand controls. Lowe disputes the need for some of these restrictions.

In March 1996, Lowe bid on a tool-room mechanic position that became available in the plant. On April 2, 1996, Lowe was awarded the position but the offer was retracted that same day. Also on the same day, Lowe was permanently assigned to the gate attendant position and reclassified as such. Accordingly, he lost his journeyman status, and his pay was lowered to that of the gate attendant position. Lowe timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination. Alabama Power did not allow Lowe to bid for subsequent journeyman positions that became available, and he filed an amended complaint with the EEOC adding a charge of retaliation.

The magistrate judge assumed that Lowe was qualified for the position of tool-room mechanic and had established a prima facie case of discrimination, but found that Alabama Power presented a legitimate, non-discriminatory reason for not awarding the position to Lowe, making summary judgment appropriate for Alabama Power. The magistrate judge also found that, since Lowe was properly denied the tool-room position and re-classified as a gate attendant, the retaliation claim failed because he lacked the proper seniority status under the CBA to be eligible for the positions on which he bid. The district judge adopted the recommendation and report and granted Alabama Power's motion for summary judgment.

## II. STANDARD OF REVIEW

We review a grant of summary judgment on ADA claims *de novo,* construing the facts in the light most favorable to the non-moving party. *Cash v. Smith,* 231 F.3d 1301, 1304-05 (11th Cir.2000). "Summary

judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996).

## III. DISCUSSION

A.    *Discrimination Claims*

The ADA prohibits employment discrimination against qualified disabled individuals.  In order to establish a prima facie case of disability discrimination, Lowe must establish that he "(1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of h[is] disability." *Cash,* 231 F.3d at 1305.  A disability is defined as a physical or mental impairment that substantially limits a major life activity of an individual.  42 U.S.C. § 12102(2).  Lowe is a double amputee below the knee and is disabled within the meaning of the statute.

The magistrate judge found that a substantial question of fact existed as to whether Lowe was qualified to perform the position of tool-room mechanic.

> The evidence submitted suggests that there exist a number of questions of fact to be resolved regarding whether plaintiff is "qualified."  There is significant evidence from both sides, for instance, regarding the essential functions of a mechanic at the steam plant, including (1) whether a mechanic must work at unprotected heights and, if so, (2) whether plaintiff is physically capable of doing this; (3) whether plaintiff will work as part of a team that can divide work assignments according to skill and ability such that plaintiff could be reasonably accommodated if a chore did come up which he believed he could not safely perform;  (4) whether plaintiff can safely access all areas of the plant; and (5) whether plaintiff is physically capable of doing all the tasks required of a mechanic.

Magistrate's Report and Recommendation, R4-129-26.

The magistrate judge nevertheless recommended that Alabama Power be granted summary judgment. He assumed for purposes of argument that Lowe was qualified and had adequately established a prima facie case of discrimination concerning the refusal to award him the mechanic's position for which he applied.  The magistrate judge then went on to find that Alabama Power had established a legitimate, non-discriminatory reason for its employment decision.  The company has relied on Carmichael's restrictions, imposed on Lowe in 1995, while Lowe was still on a leave of absence due in part to infection in his legs and when Lowe had obviously not reached maximum improvement.  The CBA required that the company rely on Carmichael. The magistrate judge found this reliance on Carmichael's restrictions reasonable, but acknowledged that "Dr. Carmichael's examination of plaintiff was somewhat cursory." *Id.* at 29.  The magistrate judge went on to explain that reliance on Carmichael's restrictions was reasonable, in part, because the restrictions were based on Carmichael's experience with other amputees.  The magistrate judge did not determine whether Lowe

*actually* posed a direct threat to the safety of others, because Lowe was unable to rebut the legitimate, non-discriminatory reason that, based on Carmichael's restrictions, Alabama Power held a good-faith and honest *belief* that Lowe posed a direct threat to the safety of others. *Id.* at 31.[1]

The statute defines a direct threat as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The implementing regulations require that:

> [t]he determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence.

29 C.F.R. § 1630.2(r).

To prevent the very reliance on stereotype and related perceptions of an individual's limitations that the ADA prohibits, an employer must point to particularized facts about the specific person's condition to support its decision. In *Bragdon v. Abbott,* the Supreme Court found that a good-faith belief that a significant risk of harm exists is insufficient if it is not grounded in medical or other objective, scientific evidence. 524 U.S. 624, 649, 118 S.Ct. 2196, 2210, 141 L.Ed.2d 540 (1998). In *Bragdon,* a dentist refused to fill a cavity for an HIV-positive patient unless the patient agreed to have the procedure performed in the hospital and pay associated costs. The lack of objective, medical evidence indicating an increased risk of infection from office treatment negated the dentist's direct-threat defense. *Id.* at 650-51, 118 S.Ct. at 2210-11.

The Sixth Circuit also has rejected a good-faith-belief defense that has no legitimate factual basis. *See Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir.1998). The key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action. *Id.* at 807. In *Smith,* the Court of Appeals for the Sixth Circuit affirmed the grant of summary judgment where the company relied on a letter from the employee's treating physician diagnosing the employee with narcolepsy and fired the employee for failing to disclose the condition on a pre-employment medical questionnaire. *Id.* at 808-09. The court noted, however, that it rejected an "application of the 'honest belief' rule [that] credits an employer's belief without requiring that it be reasonably based on particularized facts." *Id.* at 806. *See*

---

[1] Because the issue of whether Lowe actually posed a direct threat was not decided by the district judge, we do not revisit the issue of where the burden of proof should rest regarding whether the employee poses a direct threat. *See Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 447 (11th Cir.1996). We also do not address whether 29 C.F.R. § 1630.2(r) impermissibly expands the definition of direct threat provided by Congress in 42 U.S.C. § 12111(3).

*also Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1248 (9th Cir.1999) ("To protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear, the Supreme Court has required an individualized direct threat inquiry that relies on the best current medical or other objective evidence."); *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 764 (5th Cir.1996) (finding question of fact existed as to direct threat where hearing-impaired individual could safely drive school bus and hear emergency vehicles, but could not hear a choking child in the back of the bus).

This case falls in between the unfounded fear evidenced in *Bragdon* and the justifiable reliance on a physician's diagnosis in *Smith.* Alabama Power relied on its doctor's decision to impose restrictions on Lowe, but those restrictions were based on a brief meeting with Lowe in October 1994 while Lowe was taking a leave of absence based in part on the infection in his leg. When Lowe's condition improved and he returned to work, Carmichael did not examine or talk to Lowe again but imposed restrictions based on his "cursory" examination of Lowe while he was on his leave of absence nine months earlier. When Lowe applied for the mechanic position in March 1996, seventeen months had passed since Carmichael had seen him. The restrictions were also based, at least in part, on Carmichael's assumption that all double amputees have the same limitations. See R3-96-9 at 79-80. The evidence presented by Lowe's experts indicated that he had made significant gains in strength and his ability to compensate for the loss of sensory input from his feet to aid in balance and movement (proprioception) since 1994. Alabama Power's decision that Lowe was not able to perform the mechanic position safely was not based, therefore, on particularized facts using the best available objective evidence as required by the regulations.

We agree with the magistrate judge that questions of fact remain as to what the essential functions of the mechanic position are, and whether, if working at an unprotected height is an essential function, Lowe is qualified to perform such work. Accordingly, summary judgment for Alabama Power is inappropriate.[2]

B.    *Retaliation*

Lowe also appeals the grant of summary judgment on his claim for retaliation. Lowe was denied the opportunity to bid on positions covered by the CBA after he was reclassified as a gate attendant, because he did not possess the required journeyman status required by the CBA. The magistrate judge correctly noted that the legitimacy of any action by Alabama Power regarding these subsequent attempts by Lowe to bid

---

[2]Because this action is reversed and remanded, we will not address whether the district judge correctly denied as moot Lowe's motion to strike additional evidentiary materials and new issues raised in Alabama Power's reply brief.

depends on the legitimacy of the denial of the initial bid for the mechanic position and Lowe's subsequent reclassification. Because unresolved questions of fact remain regarding the discrimination claim, we will not address the retaliation claim at this time.

## IV. CONCLUSION

Because reliance on Carmichael's opinion as to Lowe's capabilities was unwarranted given the length of time between Carmichael's meeting with Lowe and Lowe's bid on the job and Carmichael's failure to determine Lowe's actual capabilities through a physical examination or functionality test, summary judgment for Alabama Power was improperly granted. Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.