**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JODIE M. KELLEY, | No. 13-36114 |
| Plaintiff - Appellant, | D.C. No. 2:12-cv-05132-TOR |
| v. | MEMORANDUM[*] |
| AMAZON.COM, INC., a Delaware corporation; AMZN WACS, INC, | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, Chief District Judge, Presiding

Argued and Submitted April 7, 2016
Seattle, Washington

Before: GILMAN,[**] RAWLINSON, and CALLAHAN, Circuit Judges.

In 2006, Jodie M. Kelley joined AMZN WACS, Inc., a subsidiary of

Amazon.com, Inc. (collectively, Amazon) as a Customer Service Associate (CSA)

in Kennewick, Washington. CSAs are responsible for fielding questions from

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Ronald Lee Gilman, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Amazon's customers and resolving their complaints. During her employment with Amazon, Kelley was afflicted with endometriosis and migraine headaches, which produced numerous painful symptoms. Kelley took intermittent periods of medical leave as a result of these conditions. Her job performance began to deteriorate in 2010. This was measured by her Expressed Dissatisfaction Rate (EDR), which was derived from customer surveys. After several unsuccessful attempts to remedy her deficiencies, Amazon fired Kelley in March 2011.

Kelley subsequently filed the instant action against Amazon in the district court, alleging that her termination violated the Americans with Disabilities Act (ADA), the Washington Law Against Discrimination (WLAD), and the Family and Medical Leave Act (FMLA). In November 2013, the district court granted summary judgment in favor of Amazon. This appeal followed.

Kelley first raises failure-to-accommodate claims under both the ADA and the WLAD. Among other requirements, success on such claims requires a plaintiff to prove that (1) she gave notice to her employer concerning her disability and its corresponding limitations, and (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1133–37 (9th Cir. 2001); *Riehl v. Foodmaker, Inc.*, 94 P.3d 930, 934 (Wash. 2004) (en banc).

Even assuming without deciding that Kelley raised a jury issue regarding the notice element—which would normally trigger an "interactive process" to identify potential accommodations, *see Humphrey*, 239 F.3d at 1137—her failure-to-accommodate claims still fail because she did not raise a jury issue regarding whether she was qualified. "A job function may be considered essential . . . [if] the reason the position exists is to perform that function." 29 C.F.R. § 1630.2(n)(2)–(2)(i). That customer service is the reason for the existence of the CSA position is obvious. And the EDR is simply an objective measure that Amazon used to evaluate whether CSAs were providing adequate customer service.

The record demonstrates that Kelley failed to create a jury issue regarding whether she can deliver adequate customer service with or without a reasonable accommodation. Over the course of at least eight months, she regularly failed to meet the EDR standard required for her team even after repeated attempts by Amazon personnel to improve her performance.

A reasonable trier of fact has no basis to conclude that any of the accommodations suggested by Kelley are reasonable. One suggestion was to transfer her to another CSA position. But the record does not indicate the availability of any positions for which Kelley was qualified, either when she was

fired or "within a reasonable period" thereafter. *See Dark v. Curry County*, 451 F.3d 1078, 1089–90 (9th Cir. 2006).

Another suggestion was that Kelley could have been granted a leave of absence. But Kelley produced no medical evidence indicating that the impairments preventing her from performing the essential functions of a CSA are treatable. *See id.* at 1088*; Humphrey*, 239 F.3d at 1131. The opinion of Kelley's doctor does not include the possibility that her "tone of voice," which Kelley argues is responsible for her performance deficiencies, could be remedied through medical treatment that would require a leave of absence.

Nor did Kelley produce evidence that she was receiving treatment for the symptoms that prevented her from performing the essential functions of her job. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999). Kelley argues for the first time in her reply brief that a leave of absence might have remedied her tonal shortcomings by allowing her an opportunity for another round of hormone shots, but there is no indication in the record that her prior treatment required a leave of absence. Any argument that Kelley could perform the essential functions of a CSA after a leave of absence is therefore speculative rather than plausible. *See Humphrey*, 239 F.3d at 1136.

-4-

Kelley's final suggestion is that Amazon could have consulted with her doctor. Although this is a potential method of discovering a reasonable accommodation, it is not a reasonable accommodation in and of itself.

Kelley's disparate-treatment claims also fail for the reasons identified above because a necessary element of such claims requires that the plaintiff be qualified to do her job. *See Humphrey*, 239 F.3d at 1133; *Riehl*, 94 P.3d at 936.

Finally, Kelley argues that a genuine dispute of material fact exists regarding her FMLA-interference claim. Proximity between the use of FMLA leave and an employee's discharge can be sufficient to send an FMLA-interference claim to a jury under some circumstances. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003). But Kelley's extensive and freely granted utilization of FMLA leave on an average of eight days per month during 2009 and 2010 belies any reasonable inference that her five uses of leave in the month prior to her discharge impacted Amazon's decision to fire her. *See Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 878 (9th Cir. 1989).

For all of the above reasons, **WE AFFIRM**.