**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 26 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RALPH VILLALOBOS, | No. 16-55288 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-02808-R-PLA |
| v. | |
| TWC ADMINISTRATION LLC, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted December 6, 2017
Pasadena, California

Before: CANBY and REINHARDT, Circuit Judges, and BLOCK,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

1

Ralph Villalobos ("Villalobos") appeals the district court's grant of summary judgment in favor of TWC Administration LLC ("TWC") on his state law claims for disability and age discrimination, and wrongful termination in violation of public policy under California's Fair Employment and Housing Act ("FEHA"). Cal. Gov't Code § 12940. Villalobos served as a Direct Sales Representative ("DSR") for TWC and its predecessors for twenty-four years before he was terminated in February 2014. Because "discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses," *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004), "it should not take much for a plaintiff in a discrimination case to overcome a summary judgment motion," *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015). California courts look to federal precedent governing analogous federal anti-discrimination laws when interpreting FEHA claims. *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1113 (Cal. 2000). The district court had diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, and we have jurisdiction over this case pursuant to 28 U.S.C. § 1291. We reverse on all five state law claims.

1. We reverse the district court's grant of summary judgment on Villalobos's disability discrimination claim. Section 12940(a) of FEHA prohibits employers

2

from firing an employee "because of" disability. *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 962 (2008). Under this section, Villalobos must show that (1) he was fired because of disability and (2) he "could perform the essential functions of the job with or without accommodation (in the parlance of [federal law], that he [] is a qualified individual with a disability)." *Id.*

Villalobos has presented direct evidence that he was fired because of his disabilities. He went on leave because of his anxiety, depression, and insomnia. TWC explained that it fired Villalobos because of "his repeated, prolonged leaves of absence which rendered him unable or unwilling to work." Terminating an employee for conduct that results from a disability is equivalent to terminating an employee based on the disability itself because "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001).

TWC argues that Villalobos could not have been terminated because of his disability because the field sales manager who decided to terminate Villalobos testified that he did not know the underlying reason for Villalobos's leave of absence. However, Villalobos presented evidence that this manager was on notice: he was copied on emails from Human Resources (HR) regarding Villalobos's

3

request for leave based on a *medical* condition. In addition, the manager testified that the decision to terminate Villalobos was "a collaborative effort" with the HR representative who reviewed his doctor's medical certifications. Because "a decision maker's ignorance does not 'categorically shield the employer from liability if other substantial contributors bore the requisite animus,'" *Wysinger v. Auto. Club of S. Cal.*, 157 Cal. App. 4th 413, 421 (2007) (quoting *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 110 (2004)), this argument fails.

Villalobos has also raised a triable issue of fact as to whether he was a "qualified individual." An employee is "qualified" if he is able to perform the essential duties of the position with or without reasonable accommodation. *Nadaf-Rahrov*, 166 Cal. App. 4th at 963. Contrary to TWC's argument, Villalobos is not precluded as a matter of law from being qualified simply because he was unable to work at the time of his termination. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999); *Humphrey*, 239 F.3d at 1135-36. This conclusion follows because one form of reasonable accommodation can be an extended leave of absence that will, in the future, enable an individual to perform his essential job duties. *Nunes*, 164 F.3d at 1247. Therefore, the proper inquiry for an otherwise qualified individual who is terminated while on leave is whether the leave was a

4

reasonable accommodation and did not impose an undue hardship on the employer. *Id.*

Villalobos has presented evidence that he was qualified apart from the need for leave. Neither his direct supervisor nor the field sales manager was able to point to a negative performance review in Villalobos's twenty-four years at TWC and its predecessor companies. In addition, there is some evidence that he was able to find employment as a door-to-door salesman for another company shortly after his termination.

A leave of absence can constitute a reasonable accommodation "where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000). When evaluating reasonableness, California courts consider whether the accommodation was "a finite leave of absence" or an "indefinite" one. *See Atkins v. City of L.A.*, 8 Cal. App. 5th 696, 721-22 (2017). Construing, as we must, the facts in the light most favorable to Villalobos, there is a triable issue of fact as to whether his requested leave of absence was finite because his doctor provided a return-to-work date of March 10, 2014. Villalobos also testified that he was ready and able to work by that date.

TWC argues that Villalobos's requested extension could not have been reasonable because he had already been granted multiple extensions that were unsuccessful.  However, a history of past accommodation does not, as a matter of law, preclude Villalobos's disability claim.  "Although an employer need not provide repeated leaves of absence for an employee . . . , the mere fact that a medical leave has been repeatedly extended does not necessarily establish that it would continue indefinitely." *Nadaf-Rahrov*, 166 Cal. App. 4th at 988.  Rather, "the fact that an accommodation has been attempted and was unsuccessful is a relevant consideration for the factfinder . . . ." *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 879 n.10 (9th Cir. 1989).  Although Villalobos's multiple requests for extensions "may in fact prove dispositive in determining whether failure to permit subsequent leave constituted failure to make a reasonable accommodation," *id.*, this is a question properly resolved by the trier of fact and is inappropriate for summary judgment.

Finally, there is a triable issue of material fact as to whether Villalobos's requested extension posed an undue hardship to TWC.  Under section 12940(m)(1), employers must provide reasonable accommodation to an employee with disability unless the employer can demonstrate that doing so would impose an "undue hardship." *Atkins*, 8 Cal. App. 5th at 733.  Undue hardship means an

6

"action requiring significant difficulty or expense" considered in light of, among other factors, "the nature and cost of the accommodation needed," "the overall financial resources" of the employer, and "the type of operations, including the composition, structure, and functions of the workforce . . . . " *Id.* Also relevant is TWC's "policy or practice of offering other employees the same or similar assistance or benefits requested by the plaintiff . . . . " *Id.* at 722.

TWC has not carried its burden of demonstrating that there is no triable issue of fact regarding undue hardship. Although TWC argues that it "could no longer accommodate Villalobos's cycle of extended, unpredictable leaves of absence," Villalobos has presented evidence that TWC has allowed at least two other employees to take extended leaves of absence, one for seven months and another for at least eighteen months. TWC attempts to distinguish these leaves on the basis that they were continuous. It argues that unlike during those leaves, TWC "could neither plan for [Villalobos's] return nor fill his position." However, Villalobos's direct supervisor testified that he also did not fill the position of the DSR who was on an indefinite leave for at least eighteen months. In addition, the field sales manager testified that it is relatively easy to transfer one of the 300-plus DSRs in the Southern California area between teams. Finally, Villalobos's direct supervisor

and the field sales manager testified that they continued to meet their sales goals even with Villalobos out on leave.

2. We also reverse summary judgment on Villalobos's separate claim that TWC failed to reasonably accommodate him. Under section 12940(m), an employer must reasonably accommodate an employee's known disability unless doing so would produce an undue hardship. For this claim, Villalobos must show (1) he has a disability under FEHA, (2) he is "qualified to perform the essential functions of the position," and (3) TWC "failed to reasonably accommodate [his] disability." *Swanson v. Morongo Unified Sch. Dist.*, 232 Cal. App. 4th 954, 969 (2014) (quoting *Scotch v. Art Inst. of Cal.-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 1010 (2009)). In light of the overlap between this claim and Villalobos's disability discrimination claim, we reverse summary judgment on this claim as well. In addition, the duty to reasonably accommodate is an "affirmative" one that is "continuing" and "not exhausted by one effort." *Id.* (quoting *Humphrey*, 239 F.3d at 1138). Therefore, a "single failure to reasonably accommodate an employee may give rise to liability, despite other efforts at accommodation." *Id.* Accordingly, it is no answer that TWC granted previous extensions if failing to do so the last time was a failure to reasonably accommodate Villalobos.

8

3. We also reverse the district court's grant of summary judgment on Villalobos's claim that TWC failed to engage in the interactive process. "Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability." *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015) (quoting *Wysinger*, 157 Cal. App. at 424); Cal. Gov't Code § 12940(n). The burden is on the employer seeking summary judgment to demonstrate that there are no triable facts as to its participation in the interactive process. *Jensen*, 85 Cal. App. 4th at 260.

"[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Humphrey*, 239 F.3d at 1138. For this reason, we look to TWC's actions in response to Villalobos's ultimate request for an extension of leave, rather than its engagement in the interactive process throughout Villalobos's periods of leave. The HR representative charged with reviewing Villalobos's accommodation requests testified that she did not communicate with Villalobos between the receipt of his request for an extension and the date he was terminated. She also testified that no

9

one informed Villalobos that he would be terminated if he failed to return to work by the end of his most recent accommodation; instead, she explained that he was informed only that any additional requests would need to be evaluated. Accordingly, TWC is unable to sustain its burden.

4. We also reverse the district court's grant of summary judgment on Villalobos's age discrimination claim under section 12940(a). Because Villalobos relies on circumstantial evidence of discriminatory discharge, the burden-shifting analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Guz*, 8 P.3d at 1113 (explaining that "California has adopted the three-stage burden-shifting test . . . for trying claims of discrimination"). Villalobos bears the initial burden of establishing a prima facie case of employment discrimination. *Id.* Then, the burden shifts to TWC to articulate a legitimate, nondiscriminatory reason for terminating Villalobos. *Id.* at 1114. If TWC provides such a reason, Villalobos must raise a triable issue that the reason is pretextual. *Id.*

To establish his prima facie case, Villalobos must show that he was: "(1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of discrimination.'" *Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th

10

Cir. 2012) (quoting *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)). The prima facie burden "is not an onerous one." *Hersant v. Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1002-03 (1997). The parties do not dispute that Villalobos was 61 at the time of his discharge. They dispute only elements two and four. We conclude that Villalobos is able to establish his prima facie case.

With respect to the second element, TWC argues that because Villalobos was terminated while on leave, his performance at the time of termination was nonexistent, let alone satisfactory. We disagree. On the basis of our conclusion that there is a triable issue as to whether Villalobos was a "qualified individual" for purposes of his disability claims, and similar to the reasoning in *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999), we conclude that there is also a triable issue of fact as to whether he was performing his job satisfactorily. He need only "demonstrate some basic level of competence at his . . . job . . . ." *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 322 (2010). Considering his history of performance rather than only his performance while on leave, no supervisor was able to point to a negative performance review in Villalobos's twenty-four years with the company.

In addition, "[e]vidence of the employer's policies and practices, including its treatment of other employees, may support a . . . finding[] that the plaintiff's job

performance did in fact satisfy the employer's own norms," which would "carr[y] the plaintiff's burden" at this stage. *Cheal v. El Camino Hosp.*, 223 Cal. App. 4th 736, 743-44 (2014) (noting that even though plaintiff "made several mistakes" in preparing patients' meals, "the hospital, under its own written policies, anticipated and expected such mistakes because . . . they were inevitable" and did not discipline other employees who made similar mistakes). Villalobos has presented evidence that an extended leave of absence was within TWC's policies and norms. After Villalobos exhausted his FMLA leave, TWC informed him that it "[stood] ready and willing to work with you to determine whether you can be reasonably accommodated to be fully functional in your position." TWC identified as one reasonable accommodation an "extended leave of absence to enable you to return to work." In addition, the field sales manager testified that TWC anticipates some absences whether for sickness or other reasons. TWC did not coach or warn Villalobos that his lack of performance while on leave could subject him to termination despite TWC's having a progressive discipline policy beginning with coaching, escalating to a verbal warning, then a written warning, and ending with termination. Finally, TWC's treatment of other employees on leave suggests that Villalobos's performance, even while on leave, was consistent with company norms and therefore satisfactory. The employees who were on leave for seven and

12

eighteen months did not receive any warnings about their performance or indications that their jobs were in danger. Viewed in the light most favorable to Villalobos, this evidence is sufficient to create a triable issue of material fact as to whether he was performing satisfactorily.

Finally, Villalobos has also demonstrated a triable issue of fact regarding whether age was a substantial motivating factor in his termination. He has presented evidence that TWC hired someone to fill his role who was substantially younger: his supervisor testified to hiring two new DSRs, aged 35 and 48, within ten months of Villalobos's termination. *France*, 795 F.3d at 1174 (explaining that age difference of ten or more years gives rise to presumption of "substantially younger"). Villalobos also testified that the field sales manager, the primary decision maker regarding his termination, made a remark during a sales meeting that he had been "hired to get rid of the veteran sales reps." Although TWC argues that this comment is ambiguous because it could be interpreted as referring to experienced DSRs rather than older DSRs, "the task of disambiguating ambiguous utterances is for trial, not summary judgment." *Reid v. Google*, 235 P.3d 988, 1008 (Cal. 2010) (quoting *Shager v. Upjohn Co.*, 913. F.2d 398, 402 (7th Cir. 1990)).

13

TWC argues that even if Villalobos is able to establish a prima facie case, it has provided a legitimate, non-discriminatory reason for his termination: "his repeated, prolonged leaves of absence." Because, as explained above, this reason is direct evidence of discrimination based on Villalobos's disabilities, this proffered reason is neither legitimate nor non-discriminatory. It does not matter at this stage that this is so because of disability discrimination rather than age discrimination. The California Supreme Court has explained that "'legitimate' reasons in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding *of discrimination*." *Guz*, 8 P.3d at 1115-16 (citations omitted). This court as well has held that an otherwise unlawful proffered reason cannot satisfy the employer's burden at step two even if it is not facially discriminatory toward the particular protected class on which the claim is based. *See Santillan v. USA Waste of Cal., Inc.*, 853 F.3d 1035, 1044-46 (9th Cir. 2017) (holding that proffered reason failed to rebut presumption of unlawful discrimination based on age because it violated California public policy by making reinstatement contingent on verification of immigration status). Because TWC has failed to rebut the presumption of discrimination, we conclude that the district court erred in granting summary judgment in favor of TWC.

14

5. Finally, we reverse the district court's grant of summary judgment on Villalobos's wrongful termination claim. Because there are triable issues on his FEHA claims, "it necessarily follows that a triable issue exists with respect to [his] cause of action for wrongful termination in violation of public policy." *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007).

**REVERSED and REMANDED**